EDWARD MILLER, Plaintiff-Appellee, *v.* THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 80-2243

Opinion filed March 10, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Sandra L. Andina, of counsel), for appellants.

Thomas Johnson, Dean Timothy Jost, and Robert E. Lehrer, all of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Edward Miller (plaintiff) is a recipient of General Assistance (GA) under article VI of the Illinois Public Aid Code (the Code) (Ill. Rev. Stat 1979, ch. 23, par. 1—1 et seq.). He is a member of the class of GA recipients who desire assistance in making payment for optical services and most types of dental care. Payment for these services is refused by the defendant Illinois Department of Public Aid (IDPA), which administers the Code's programs. This class action suit for declaratory judgment and injunctive relief was brought on behalf of all members of plaintiff's class,[1] challenging IDPA's policy. This appeal arises from an order of the trial court which granted summary judgment to plaintiff declaring IDPA's policy to be illegal, and from entry of an injunction order which precluded IDPA from further denial of payment for dental and optical care.

The issues raised by IDPA on review are: (1) whether the trial court erred in interpreting the relevant portion of the Code so as to require payment for the services desired, and (2) whether the trial court erred in finding that the policy of IDPA violated the equal protection provisions of the Federal and State constitutions.

Due to the outcome of the proceedings below, the facts are derived entirely from the pleadings, discovery, and supporting briefs filed by the parties and are not disputed.

The Public Aid Code provides various types of assistance to needy persons who qualify for such aid. The underlying purpose of the programs found in the Code is to "assist in the alleviation and prevention of poverty" in Illinois. (Ill. Rev. Stat. 1979, ch. 23, par. 1—1; Cornue v. Weaver (1975), 29 Ill. App. 3d 546, 549, 331 N.E.2d 148, rev'd sub nom. Cornue v. Department of Public Aid (1976), 64 Ill. 2d 78, 354 N.E.2d 359.) IDPA is charged by a Code provision with the general administration of these programs. (Ill. Rev. Stat. 1979, ch. 23, par. 12—1.) IDPA also has the authority to make all rules and regulations and to take such action as may be necessary or desirable for carrying out the provisions of the Code. Ill. Rev. Stat. 1979, ch. 23, par. 12—13.

Plaintiff's predecessor in interest sought assistance from IDPA in

---

[1] This suit was originally brought by Leo Kuzmicki, another member of the class of General Assistance recipients. During the pendency of the action, Kuzmicki died and was replaced by Edward Miller.

making payment for optical and nonemergency dental services which he needed. Presently, rules and regulations adopted by IDPA to govern the GA program exclude, by implication, financial assistance for optical care and nonemergency dental care to eligible GA recipients. (Rules & Regulations, Ill. Dept. of Public Aid, Rule 4.011(a)(2).)[2] Thus, the request for assistance was denied.

Faced with this refusal of assistance by IDPA, plaintiff's predecessor filed this action. IDPA moved to dismiss the suit for failure to exhaust administrative remedies. The trial court granted this motion and the original plaintiff appealed. This court reversed and remanded the case for further action in *Miller v. Department of Public Aid* (1979), 69 Ill. App. 3d 477, 387 N.E.2d 810.

On remand, discovery was completed. Prior to March 1, 1974, IDPA provided payment for nonemergency dental services as well as some optical services to GA recipients. According to IDPA, both of these programs were discontinued as of that date due "mainly to increased costs in the G.A. program in general and the necessity to allocate available resources."

Each party filed a motion for summary judgment, together with lengthy supporting briefs. The trial court entered an order granting plaintiff's motion, finding that "IDPA violated their duties under the Public Aid Code and the constitution and abused their discretion." The transcript of the oral finding made by the court shows that it had "adopt[ed] the brief of [plaintiff] that is corroborative of this court's ruling in this case." Plaintiff then moved for injunctive relief at the suggestion of the trial court. This motion was. granted. IDPA was permanently enjoined from refusing to pay for all "necessary dental services and necessary optical services and supplies." The services encompassed therein were defined by the trial court's adoption of IDPA regulations previously applicable only to eligible recipients of assistance under the Medicaid program. (Ill. Rev. Stat. 1979, ch. 23, pars. 5—1 through 5—14.) From this result, IDPA appealed.

I.

IDPA contends that the trial court erred in its interpretation of the provisions of article VI of the Code, thereby unduly restricting the discretion which IDPA believes has been granted to it by statute.

---

[2] IDPA clarifies its rules and regulations for its staffers by means of an operations manual. Therein, it is stated that payment to GA recipients for the types of services sought is restricted to "necessary or essential medical care," and that "preventative care is not considered essential." (IDPA Gen. Asst. Man. PO-1100.) Optical services are not included in any way in the list of allowable medical services. (PO-1115.) Dental services are "limited entirely to *emergency* dental care for the relief of pain and infection ° ° °." (Emphasis theirs.) PO-1115.9(a).

14

## A.

It is evident that resolution of this issue requires our examination of the particular language used by the legislature in the provisions of the Code. There is no controlling precedent on this matter. A cardinal rule of statutory construction in such instances is that this court must ascertain and give effect to the true intent and meaning of the legislature, as found in the history, existing circumstances, and contemporary conditions of the legislation. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73, 285 N.E.2d 129, *cert. denied sub nom. Splinter v. Hanrahan* (1972), 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562.) Of particular importance, then, is a careful scrutiny of the evolution of the relevant statute.

The initial comprehensive codification of Illinois public assistance law which included the GA program can be found in the 1949 Public Assistance Code. (1949 Ill. Laws 404 *et seq.*) In that statute, "General Assistance" was defined as "money payments to or in behalf of needy persons as provided in Article IV of this Code, * * *." GA grants to needy persons *"may*, in addition to direct money payments, include care, support, service, medical or surgical care, nursing, or board and care in a private institution * * * and such other aid as the conditions may make necessary for each case." (Emphasis added.) (1949 Ill. Laws 406, §1—8.) Another section of the statute set forth the eligibility standards. "Persons who for unavoidable causes are unable to maintain a decent standard of living * * * are entitled to general assistance." (1949 Ill. Laws 417, §4—1.) The amount of the grant "shall be sufficient * * * to provide such person with a reasonable subsistence compatible with health and well-being." (1949 Ill. Laws 419, §4—4.) Finally, the statute granted the Illinois Public Aid Commission the power and duty to, among other things, "make all the rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of this Code * * *." 1949 Ill. Laws 408, §2—2(d).

In 1951, amendments were made to some of the relevant sections of the 1949 Code. The definition of "General Assistance" remained unchanged, as did the eligibility standards. (See Ill. Rev. Stat. 1951, ch. 23, pars. 436—8, 439—1, respectively.) The provision governing the amount of the GA grant underwent a significant modification. Added to the above-quoted language of the 1949 Code regarding the size of the grant was the directive that the grant in addition *"may include* amounts paid to the recipient, * * * in order to make available necessary treatment, care and supplies required because of illness or disability. Whenever services are required * * * because of illness or disability of recipients, the supervisor of general assistance may provide for the services of persons licensed * * * to provide dental, medical, pharmaceutical, optometric,

or nursing services or other remedial care recognized under State law * * *." (Emphasis added.) 1951 Ill. Laws 1894, §4—4.

Further amendments to the 1949 Code were made in 1957. A minor change in the definition of "General Assistance," not relevant to this case, occurred. (See Ill. Rev. Stat. 1957, ch. 23, par. 108.) The language governing the amount of the GA grant remained essentially unchanged. (Ill. Rev. Stat. 1957, ch. 23, par. 404.) A significant addition to the eligibility standards was enacted, however. Under the 1957 amendment, certain persons *"shall be eligible* to receive aid in meeting their minimum subsistence requirements (including, where necessary, amounts paid * * * in order to make available necessary treatment, care and supplies required because of illness or disability) through a grant of general assistance under this Article if such persons: [meet the specified eligibility test]." (Emphasis added.) 1957 Ill. Laws 721, §4—1.

In 1965, the legislature took action in relation to the 1949 Code upon which plaintiff places great significance. "General Assistance" was notably redefined to mean "money payments to * * * needy persons qualifying therefor under (a) Article IV * * * for subsistence support; * * * medical, surgical, *dental*, pharmaceutical, *optometric*, or nursing services or other remedial care recognized under State law; * * * and such other care and services as are determined to be necessary in each case." (Emphasis added.) (1965 Ill. Laws 1313, §1—8.) This amendment was approved on July 8, 1965. Only 25 days later, the above language was dropped from the definition in another amendment. The legislature returned to the definition of "General Assistance" which it had adopted in relevant part in 1949. References to dental and optometric services, as well as others, were deleted. (See 1965 Ill. Laws 2155, §1—8.) This last amendment was approved on August 2, 1965. Plaintiff failed to note the existence of this alteration in his brief.

The 1965 amendments did not affect the statute's eligibility standards. (See Ill. Rev. Stat. 1965, ch. 23, par. 401.) Some rewording of the language of the section governing the amount of the GA grant was made, as well as the addition of some other provisions. However, these changes did not relevantly alter the import of the section. See Ill. Rev. Stat. 1965, ch. 23, par. 404.

The last and, for plaintiff's argument, most significant changes in the public aid law occurred in 1967. The 1949 Code was wholly revised, reentitled the Illinois Public Aid Code. (1967 Ill. Laws 118.) In a statement of purpose found in the new Code, the legislature expressed its intent that the new Code "shall grant no lesser or greater rights or impose any greater or lesser obligations upon applicants or recipients or administrative agencies than exercised under such prior Code except as they may be

changed hereafter by specific amendment * * *." (Ill. Rev. Stat. 1967, ch. 23, par. 13—1.) A particular definition of "General Assistance" no longer appeared in the Code.[3] The eligibility standards for the GA program were rephrased. "Financial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being, plus any necessary treatment, care and supplies required because of illness or disability, shall be given under [GA] to or in behalf of persons who meet the eligibility conditions of [the GA program]." (Ill. Rev. Stat. 1967, ch. 23, par. 6—1.) The provision governing the amount of the GA grant was streamlined. The remaining relevant language stated that "[t]he grant shall be sufficient * * * to provide the person with a livelihood compatible with health and well-being * * * [and] *may also be made* to provide persons receiving basic maintenance support with necessary treatment, care and supplies required because of illness or disability." (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 23, par. 6—2.) Finally, IDPA, which had replaced the Illinois Public Aid Commission, remained authorized to "make all rules and regulations and take such action as may be necessary or desirable for carrying out the provisions of this Code, * * *." Ill. Rev. Stat. 1967, ch. 23, par. 12—13.

## B.

This history of these salient provisions of the Code, viewed in conjunction with the enunciated legislative purpose underlying the entirety of that statute, convinces us that IDPA has a more persuasive argument on this issue.[4] We perceive the provisions of the GA program as setting forth a flexible public assistance scheme and as granting the administering agency, IDPA, broad discretion to make the often difficult decisions regarding the precise allocation of the program's scarce resources among those who come within the program's general framework.

Our holding focuses upon two of the statutory segments set forth above: the 1949 Code's definition of "General Assistance" (which is absent from the current Code but is nonetheless worthy of consideration), and the "amount" provision of both Codes which in general terms defines the amount of aid to be available under the GA program. Both of these

---

[3] Interestingly, the broader term "Public Aid" was defined to encompass, among other things, "medical, surgical, dental, pharmaceutical, optometric, or nursing services, or other remedial care recognized under State law." (Ill. Rev. Stat. 1967, ch. 23, par. 2—2.) This term is generally applicable to the entire Code.

[4] We note at this juncture that much argument made by both parties focused upon other programs enacted under the broad umbrella of the Code. Especially focused upon were the Aid to the Medically Indigent (article VII) and Medical Assistance (Medicare) (article V) programs. We find the introduction of these separate and distinct schemes of relief to be unnecessarily and unduly obfuscatory of the precise issue at hand. Because we find these attempted analogies to be improper in the context of this case, we have made no effort to apply them in resolving the issues presented.

sections utilize the word "may" in delineating the parameters of the GA program. Thus, the definition of "General Assistance" states that GA "may include" medical or surgical care. (Ill. Rev. Stat. 1965, ch. 23, par. 108.) The amount of GA provided to recipients "may include" assistance for necessary treatment, care or supplies required because of illness or disability. Ill. Rev. Stat. 1979, ch. 23, par. 6—2.

■■ Unless there is an indication of a legislative intent to the contrary, words in a statute should be given their plain, commonly understood meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222.) The word "may" in statutory usage has been defined by the courts in both a discretionary and a mandatory sense, depending on the court's conclusions as to the legislature's intent. This intent is not to be ascertained from form, but from the nature and object of the act and the consequences which result from construing it one way or another. (*Duna v. National Bank* (1961), 28 Ill. App. 2d 500, 503, 171 N.E.2d 802; see 2A Sutherland, Statutes & Statutory Construction §57.02—.03 (4th ed. 1973).) In seeking the legislative intent, the court will consider the evil which the statute seeks to remedy and the goal which it seeks to attain, in addition to considering the statute's language itself. *People v. Dednam* (1973), 55 Ill. 2d 565, 568, 304 N.E.2d 627.

As noted, the Code as a whole seeks to alleviate and prevent poverty in Illinois. (Ill. Rev. Stat. 1979, ch. 23, par. 1—1.) The means of achieving this goal in the GA program is through financial aid enabling recipients to meet basic maintenance requirements for a livelihood compatible with health and well-being. (Ill. Rev. Stat. 1979, ch. 23, par. 6—2.) These purposes are, of course, limited in achievability by very real fiscal considerations. We can take notice of the obvious fact that money for the GA and other public welfare programs does not flow from an inexhaustible source. Construction of the Code's language must reflect this circumstance. Constriction of the discretion which is granted to IDPA by statute to cope with these economic concerns, by means of an unnecessarily restrictive interpretation thereof, would in our view defeat rather than further the legislature's aim.

■■ Consequently, we believe that the term "may" as used in these provisions means just what its common usage would be: the aid granted under the GA program includes sums for basic maintenance support and *may* additionally include other items, such as payment for optical and nonemergency dental care. The decision as to whether these services and others are to be provided has *not* been conclusively made by the legislature. Rather, the decision has been left to IDPA, to be made through that agency's utilization of the administrative discretion granted to it by the terms of the statute.

■■ As noted, IDPA is charged with adopting such rules and regulations

as are necessary to carry out the spirit and purpose of the Code. (Ill. Rev. Stat. 1979, ch. 23, par. 12—13.) Wide latitude must be given to such agencies in their exercise of such discretion. The agency's discretion is broad, and its exercise will not be overturned by this court solely because we may think that the decision is unwise or because we find the policy behind it inappropriate. It is not for this court to rewrite the statute or regulations promulgated thereunder where the agency's decision is not in excess of the power granted to it. (*James v. Cook County Department of Public Aid* (1970), 126 Ill. App. 2d 75, 80, 261 N.E.2d 420, *appeal denied* (1970), 44 Ill. 2d 584.) Here, nothing in the statute *requires* IDPA to provide the services sought by plaintiff. Faced with a growing GA applicant pool and a concomitantly expanding program cost, IDPA was acting within the scope of its powers in determining that a reasonable allocation of scarce funding required termination of payment for the optical and nonemergency dental needs of GA recipients.[5] We do not believe that the action of IDPA prior to March 1, 1974 in providing nonemergency dental and some optical service is decisive. We find nothing contrary to the governing law in this determination.

That part of plaintiff's argument in support of the trial court's decision which we perceive as being relevant to the issue at hand (see footnote 4) focused upon the language contained in section 6—1 of the Code. As noted, this *eligibility* provision of the GA article, as paraphrased here, states that financial aid for basic maintenance needs plus necessary treatment "shall" be given under the GA program to eligible persons. On its face, this section could be read as being contradictory to the statutory construction we have just made, by finding this language to be a legislative directive that *all* required medical needs of recipients be provided through the GA program. We are of the opinion that such a reading is incorrect. We base this conclusion on an examination of the history of what is presently section 6—1 of the Code.

■■ Prior to the enactment of the 1967 Code, the eligibility provision of the GA program, set out above in subsection A, was phrased in the reverse of the present language. While the section presently reads, in effect, "assistance shall be given to those found eligible hereunder," the 1949 Code's GA eligibility segment read, in effect, that "persons meeting the requirements set forth hereunder shall be *eligible* for any aid which may be available under the program." (See Ill. Rev. Stat. 1965, ch. 23, par. 401.) Thus, the 1949 section did not set forth specific types of *aid* and mandate their provision; that section only mandated that *those falling*

---

[5] IDPA states that an affidavit is in the record which represents the estimated annual cost increase which would flow from the trial court's decision to be about $3.28 million. (The entire GA budget for fiscal 1981 is represented to be $140.8 million.) We did not locate this alleged affidavit in the record.

*within the intended scope* of the GA program shall be granted whatever aid the statute, or IDPA acting pursuant thereto, determined would be provided. In revising this section in the 1967 Code, the legislature reversed the order of this language and, we believe, unfortunately created the confusion which gave rise to this lawsuit. However, as we have previously noted, this 1967 revision of the Code was not intended to grant any greater rights to recipients or to impose any greater obligations upon IDPA than were in effect under the prior statute. (Ill. Rev. Stat. 1979, ch. 23, par. 13—1.) In light of the principle of statutory construction that sections of a statute should be construed as being consistent where possible, rather than inconsistent (*Yeley v. Bartonville Fire & Police Commission* (1978), 64 Ill. App. 3d 448, 451, 380 N.E.2d 1387), and that in reading a statute, the entire enactment must be considered rather than only a portion of it (*People v. Holleman* (1980), 82 Ill. App. 3d 409, 414, 402 N.E.2d 784), we read section 6—1 as an eligibility provision which mandates only that those meeting the tests for GA eligibility set forth elsewhere shall receive such aid as the statute has otherwise provided. Section 6—1 does *not* mandate that GA recipients receive any form of necessary treatment, care and supplies required because of illness or disability.

In summary, IDPA is given discretion under the Code to determine the extent and types of assistance to be forthcoming under the GA program within the broad borders which the statute outlines. Nothing in the Code *requires* that IDPA provide recipients with payment for optical or nonemergency dental care. Such aid *may* be provided if IDPA so decides in the exercise of its discretion. Any other reading of the Code's provisions would be contrary to the legislature's intent and to the economic realities which themselves clearly constrain the ambit of this public relief program.

## II.

IDPA maintains that the trial court erred in ruling that the agency's position with regard to payment for the disputed services violates the equal protection clauses of the Federal and State constitutions.

■■ When social and economic legislation is challenged as being violative of equal protection, the appropriate standard of judicial review is the "rational relation test." The courts will not invalidate legislation which is simply deemed unwise or inartfully drawn. (*United States R.R. Retirement Board v. Fritz* (1980), ___ U.S. ___, ___, 66 L. Ed. 2d 368, 376, 101 S. Ct. 453, 458-59.) If the legislative classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may

justify, if not require, rough accommodations. (*Dandridge v. Williams* (1970), 397 U.S. 471, 485, 25 L. Ed. 2d 491, 502, 90 S. Ct. 1153, 1161.) If the legislature's judgment is rational and the classification is not invidious, its efforts to tackle the problems of the poor are not subject to a constitutional straitjacket. (*Jefferson v. Hackney* (1972), 406 U.S. 535, 546, 32 L. Ed. 2d 285, 296, 92 S. Ct. 1724, 1731.) Where any plausible reasons for the legislature's action can be discerned, this court's inquiry ends. It is constitutionally irrelevant whether these reasons did in fact underlie the legislative decision. *Fritz*, ___ U.S. ___, ___, 66 L. Ed. 2d 368, 378, 101 S. Ct. 453, 461.

The legislature's stated purpose in enacting the wide-ranging programs of the Code is to assist in the alleviation and prevention of poverty in Illinois. To accomplish this goal, the Code authorizes financial aid to persons in need thereof in order that they may maintain a livelihood compatible with health and well-being, develop self-reliance, and realize their capacities for self-care and self-support. Ill. Rev. Stat. 1979, ch. 23, par. 1—1.

■■ To carry out this purpose, the legislature created several distinct aid programs which offer varying types of assistance to different groups of people. (See Ill. Rev. Stat. 1979, ch. 23, pars. 3—1 through 7—6.) Faced with the obvious constraints of finite financial resources, the legislature in its wisdom drew lines and thus classified the needy among these various programs. We have been shown no evidence nor presented with meritorious argument which indicates that this classification scheme is arbitrary or that its intent was invidious. To the contrary, we find that the legislature responded to a difficult set of circumstances by constructing a rational public aid system well designed to utilize the restricted funding available to meet an excess of need. Therefore, we find no constitutional fault in the general construct of the various programs enacted under the Code.

Plaintiff contends that an unconstitutional line has been drawn within the GA program itself between those recipients desiring optical and nonemergency dental care and those desiring other types of medical assistance. We note that the GA medical assistance program is not mandated by the legislature to be otherwise comprehensive with the exception of the disputed services.[6] On the contrary, IDPA is, as held in section I above, vested with discretion to determine what, if any, types of medical aid are to be provided. The agency has exercised that discretion and made available only certain types of medical services. Included are in-patient and out-patient hospital care (except for rehabilitation and

---

[6] Plaintiff's assertion that the GA medical assistance program is comprehensive is erroneous, as can be seen from the reading of the Code which we have made, expounded in section 1 above.

psychiatric services), emergency dental care for the relief of pain and infection, and transportation to and from the source of medical care. (Rules & Regulations IDPA, Rule 4.011(a)(2).) We do not view this classification, drawn pursuant to the agency's statutorily granted discretionary powers, as being either arbitrary or invidious. Since budgetary constraints do not allow payment of the full standard of medical needs of all GA recipients, IDPA certainly could have concluded that hospital care and emergency dental assistance were the most necessary to the recipient class. While different policy judgments are of course possible, this particular decision is neither irrational nor invidious. Whether or not one agrees with this State determination, there is nothing in the constitution which forbids it. See *Jefferson v. Hackey* (1972), 406 U.S. 535, 549, 32 L. Ed. 2d 285, 298, 92 S. Ct. 1724, 1733.

We therefore find that the public aid scheme as a whole and the GA program in particular, as devised by the legislature and implemented by IDPA, comports with the equal protection principles of the constitution.

For the preceding reasons, we dissolve the injunction and reverse the judgment order entered by the circuit court of Cook County, and we enter summary judgment for IDPA.

Injunction dissolved, trial court reversed, judgment for IDPA.

STAMOS and PERLIN, JJ., concur.