PHILIP G. NEFF, Plaintiff-Appellant, v. JEFFREY C. MILLER, Director of Public Aid, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—1891

Opinion filed July 16, 1986.

Terence J. Tyksinski, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, Owen M. Field and James C. O'Connell, Special Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Plaintiff, Philip G. Neff, appeals from an order of the trial court, affirming a final administrative decision of defendant Jeffrey C. Miller, Director of defendant Department of Public Aid (Department). The plaintiff was ordered to reimburse the Department an amount of $3,432 at the rate of $286 per month for support rendered plaintiff's ex-wife while they were still married. Plaintiff contends: (1) he is not required by the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 10—1 *et seq.*) (Code) to pay the charges because his ex-wife voluntarily left the family and home; (2) the standard and rules under the Code, requiring support from responsible relatives, were improperly construed and therefore incorrectly applied to plaintiff's situation and (3) the standard adopted on October 1, 1975, by the Department did not meet the Code requirement that it be recomputed periodically.

Philip and Genevieve Neff were married in November 1954, and five children were born of the marriage. On October 13, 1975, Mrs. Neff left the family home and entered a psychiatric facility for treatment of mental problems. She eventually moved into a nursing home. Plaintiff continued to give Mrs. Neff "pocket money" through 1977 and paid for various expenses in 1978. The marriage was dissolved on June 19, 1981.

Mrs. Neff received public assistance beginning in December 1978. On January 30, 1980, the Department notified plaintiff that he was considered to be a "legally responsible relative" and, therefore, was liable for the assistance furnished his wife. The Department informed plaintiff that he owed the full amount of assistance unless he supplied requested documentation which it could use to evaluate his financial

ability to pay.

After plaintiff failed to submit his latest Federal income tax return, he was considered fully liable for assistance of $15,033.41 furnished to his wife over a 15-month period. On May 1, 1980, the Department issued an administrative support order, requiring plaintiff to pay $1,002 per month, effective June 1, 1980. Plaintiff responded by submitting his 1979 tax return and requested reconsideration on the matter. Based on the information provided, the Department redetermined the support obligation by using Attachment I to Department Rule 6.01, codified as "Standard A For Determining Responsible Relative Liability," table to 89 Illinois Administrative Code, section 103.10 et seq. (Standard A). According to Standard A, plaintiff's obligation was determined to be $286 per month, and a support order to that effect was issued on July 1, 1980. Plaintiff contested the order and requested a hearing.

An administrative hearing took place on October 24, 1980. A caseworker from the Cook County department of public aid testified regarding the process by which plaintiff's support obligation was determined. Plaintiff then testified regarding his wife's departure from the home, his contributions to her support, and his expenses for maintaining the family and home. The hearing officer made several findings, including a determination that Mrs. Neff voluntarily left the home in 1975 and did not return and that plaintiff had been notified that the Department calculated the $286-per-month figure pursuant to the Code. On November 10, 1980, the Director of the Department issued a final administrative decision, affirming the administrative support order.

Plaintiff filed a complaint for administrative review of the order. On November 22, 1982, the trial court reversed the Department's decision, finding that the common law relieved a spouse from the duty to support when the other spouse voluntarily left the home. Defendants filed a motion for reconsideration. On June 28, 1984, upon reconsideration, the court affirmed the final administrative decision. The court entered judgment against the plaintiff in the amount of $3,432 to be paid at $286 a month. This amount was to cover the assistance given Mrs. Neff for the period from June 1980, when the administrative support order took effect until the Neffs' divorce in June 1981. Plaintiff appeals the decision.

■■ Plaintiff initially contends that the Illinois Public Aid Code has not abrogated the common law, under which a spouse does not remain liable for support where the other spouse voluntarily leaves the marital home without cause or consent. (See Ross v. Ross (1873),

69 Ill. 569; 21 Ill. L. & Prac. *Husband & Wife* sec. 52 (1977).) Article X of the Code, however, states:

"It is the intent of this Code that the financial aid and social welfare services herein provided supplement rather than supplant the primary and continuing obligation of the family unit for self-support to the fullest extent permitted by the resources available to it. *This primary and continuing obligation applies whether the family unit \*\*\* of husband and wife remains intact and resides in a common household or whether the unit has been broken by the absence of one or more members of the unit.* The obligation of the family unit is particularly applicable when a member is in necessitous circumstances and lacks the meaning of a livelihood compatible with health and well-being.
* * *
By accepting financial aid under this Code, a spouse \*\*\* shall be deemed to have made assignment to the Illinois Department for aid \*\*\* of any and all rights, title, and interest in any support obligation up to the amount of financial aid provided. The rights to support assigned to the Illinois Department \*\*\* shall constitute an obligation owed the State \*\*\* by the person who is responsible for providing the support, and shall be collectible under all applicable processes." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 23, par. 10—1.)

The Code defines a "family unit" as "husband and wife" and considers "spouses" to be "legally responsible relatives." (Ill. Rev. Stat. 1979, ch. 23, par. 2—11.) Further, the Code declares that "[a] husband is liable for the support of his wife, and a wife for the support of her husband." Ill. Rev. Stat. 1979, ch. 23, par. 10—2; see also 21 Ill. L. & Prac. *Husband & Wife* sec. 51 (1977).

Plaintiff argues that, with this language, the legislature merely intended to restate the common law that a husband and wife are liable, if able, for the other's support furnished by the Department. We disagree. We believe that the legislature went further and clearly indicated that it is the legal relationship between the spouses which controls the responsibility for support regardless of whether they reside together. A finding that one spouse left the marital home, therefore, does not affect the determination that the other spouse is a legally responsible relative under the statute. (See *Department of Mental Health v. Beil* (1976), 44 Ill. App. 3d 402, 407, 357 N.E.2d 875.) When the supreme court discussed the Mental Health Code in *Department of Mental Health v. Warmbir* (1967), 37 Ill. 2d 267, 269, 226 N.E.2d 4, it stated:

"The statute in question obligates a person to pay something for his or her spouse in a State mental hospital. This obligation devolves on every married person simply by virtue of the relationship."

We believe that, similarly, the statutory obligation of a spouse under the Public Aid Code continues as long as the parties maintain their legal marital relationship. We therefore find that plaintiff's responsibility for his wife's support continued until their marriage was dissolved.

■ Plaintiff next contends that the Department did not properly construe section 10—3 of the Code. This section states that the Department is to establish a standard which will measure the ability of responsible relatives to provide support and that the Department is to implement the standard of rules governing its application. The section further charges:

"The standard and the rules shall take into account the buying and consumption patterns of self-supporting persons of modest income, present or future contingencies having direct bearing on the maintenance of the relative's self-support status and fulfillment of his obligations to his immediate family, and any unusual or exceptional circumstances including estrangement or other personal or social factors, that have a bearing on family relationships and the relative's ability to meet his support obligations. The standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors." (Ill. Rev. Stat. 1979, ch. 23, par. 10—3.)

Plaintiff complains that the Department's "mechanistic chart," Standard A, is comprised of only two elements—adjusted gross income and number of dependents—and fails to take into account the factors required by the legislative mandate of section 10—3. The Department admits that the chart is based on the two elements; however, it emphasizes that the chart extends in a curvilinear manner at the rate of 1% for every $1,200 of annual adjusted gross income after a $7,199 exemption for the first two dependents and a $2,400 exemption for each additional dependent. The Department points out that the exemptions incorporate various factors, including rent or property payments, taxes, insurance, medical costs, and educational expenses. It notes that the use of the adjusted gross income figure also accounts for expenses such as those associated with moving and with alimony payments.

Plaintiff further argues that Department Rule 6.01, as currently codified and amended in 89 Illinois Administrative Code, section

103.10 *et seq.*, does not consider the mandates of Code section 10—3, such as "present or future contingencies" or "unusual or exceptional circumstances." Rule 6.01 provides:

"The Department shall seek to obtain support for recipients from legally responsible individuals and shall seek the enforcement of support obligations.

A. Legal Responsibility to Support

The following persons are 'responsible relatives' who are legally responsible for the financial support and maintenance recipients:

1. Spouse for spouse.

\* \* \*

B. Determination of Ability to Support

The Department shall determine a responsible relative's ability to support dependents according to the standards and assets limitations indicated below.

A responsible relative is liable for all assistance provided to or in behalf of the recipient, unless the relative establishes a lesser ability to support by providing the Department with income and asset information from which it can determine the relative's ability to support.

\*\*\*

2. Responsible relative living apart from recipient/assistance unit—

a. AABD, AFDC, MANG, GA (City of Chicago Only) and AMI:

The Department shall apply Standard A (Attachment I) to the gross income figure contained on the relative's most recent Federal Income Tax return to determine the relative's ability to support. The relative must submit a copy of his/her most recent Federal Income Tax return for this determination, or remain liable for all assistance provided to or in behalf of the recipient. \*\*\*

b. The Department will redetermine and, when indicated, adjust the amount of a support obligation on the basis of Standard A if:

i. The relative has sustained a significant reduction in income since the support obligation was determined, or

ii. There has been an increase in the number of the relative's dependents.

c. A relative may be relieved of a support obligation under the following circumstances:

i. A husband or wife may be excepted from the obligation to support a spouse who receives public aid if the spouse, though able, willfully failed or refused to support the husband or wife for a period of 5 years immediately preceding the spouse's application for assistance.

\* \* \*

d. The responsible relative has the right to petition for modification of or release from the Department's order requiring the relative to provide support. The petition must be filed in writing with the Department no later than 30 days from the date of mailing of the support order."

██ Administrative agencies are to be afforded substantial discretion by a reviewing court in construing and applying their own rules, and it should interfere only where the agency's interpretation is plainly erroneous or inconsistent with long-settled constructions. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 421, 447 N.E.2d 418.) Section 10—3 of the Code states only that a standard is to be established. There is nothing which requires that all plaintiff's expenses and circumstances be considered in the determination of his support obligation. A general rule is frequently necessary for the efficient administration of programs so that they may be administered with a modicum of efficiency even though such rules inevitably produce seemingly arbitrary consequences in some individual cases. (*Califano v. Jobst* (1977), 434 U.S. 47, 53, 54 L. Ed. 2d 228, 234, 98 S. Ct. 95, 99.) The fact that another standard or rule may be more feasible will not justify a reviewing court to reverse the administrative decision. (*Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515-16, 198 N.E.2d 326, *cert. denied* (1965), 379 U.S. 964, 13 L. Ed. 2d 558, 85 S. Ct. 655; *Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 501, 402 N.E.2d 709.) We believe that the Department did consider the appropriate legislative mandates when it developed Rule 6.01 and the accompanying Standard A.

██ Plaintiff argues that, in the alternative, the support order should fail because it was against the manifest weight of the evidence and that the proceedings upon which it was based did not comport with due process of law. In an administrative review proceeding, it is not the function of either the trial court or the appellate court to reweigh the evidence or assess the credibility of the witness. (*Broadway v. Secretary of State* (1985), 130 Ill. App. 3d 448, 452, 473 N.E.2d 967.) The hearing officer heard all the evidence presented and made findings that required plaintiff to pay his support obligation. Although

plaintiff complains that the Department caseworker was sent to the hearing ill-prepared and that the hearing officer herself commented that it would have been easier, for cross-examination purposes, if the Department representative was someone who had participated in the initial decision, we do not find that the final administrative decision was against the manifest weight of the evidence and will not reverse on that basis. (*Whitley v. Board of Review* (1983), 116 Ill. App. 3d 476, 478, 451 N.E.2d 942.) Further, we believe that the administrative due process requirements of a definite charge, adequate notice, and a full and impartial hearing were met in the instant case. See *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 596, 417 N.E.2d 745; *Hill v. Day* (1975), 28 Ill. App. 3d 202, 206, 328 N.E.2d 142.

■■ ■ Plaintiff lastly contends that Standard A failed to meet statutory requirements because it had not been recomputed in the almost five-year period since its adoption on October 1, 1975. The Public Aid Code provides that "The standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors." (Ill. Rev. Stat. 1979, ch. 23, par. 10—3.) Although the legislature did not define "periodically" in the statute, it vested in the Department the discretion to make and carry out the rules necessary for implementing the Code provisions. (Ill. Rev. Stat. 1979, ch. 23, par. 12—13.) Wide latitude is to be given to administrative agencies in the exercise of the discretion afforded them. (*Rivera v. Department of Public Aid* (1985), 132 Ill. App. 3d 213, 218, 476 N.E.2d 1143, citing *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 18, 418 N.E.2d 178.) Where discretionary authority has been vested in an administrative body, Illinois courts will not interfere unless it has been used in an arbitrary or capricious manner. (*Cotovsky v. Department of Registration & Education* (1982), 110 Ill. App. 3d 417, 424, 442 N.E.2d 520.) We do not believe that the Department has exercised its authority in the instant case in an arbitrary or capricious manner.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.