STEVEN TALBERT *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF AGRICULTURE, State of Illinois, Defendant-Appellant.

Fifth District   No. 5—87—0231

Opinion filed May 10, 1988.

Neil F. Hartigan, Attorney General of Springfield, (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellant.

Michael V. Frierdich and Arthur W. Morris, both of Frierdich, Lopinot, Buser & Morris, of Columbia, for appellees.

JUSTICE KARNS delivered the opinion of the court:

The Department of Agriculture (the Department) appeals from a judgment of the circuit court of St. Clair County reversing its decision to deny the plaintiffs, Steven and Louis Talbert (the Talberts), a substantial portion of their 1985 stallion owners award from the Illinois Thoroughbred Breeders Fund Program. We affirm.

On December 24, 1979, the Talberts filed with the Department a 1980 application for stallion eligibility for a horse named Tarter Chief under the Illinois Thoroughbred Breeders Conceived and Foaled Program (the Program). The Program, administered by the Department, is designed to encourage the breeding and ownership of thoroughbred horses in Illinois. (See Ill. Rev. Stat. 1979, ch. 8, par. 37—30(a).) Under this program, if not less than 50% of a stallion is owned by an Illinois resident(s) who has been a resident of the State for the past 12 months, and the stallion is standing for service within Illinois at the time of a colt's conception and does not stand for service any place outside of Illinois during that calendar year, the owner(s) of such stallion is entitled to receive a stallion owners award based on the race winnings of the progeny sired during the application year of the qualifying stallion. (See Ill. Rev. Stat. 1979, ch. 8, par. 37—30; 8 Ill. Adm. Code 290.150, 290.210 (1980).) On their 1980 application, the Talberts attached an affidavit stating that each of them owned a 50% share of Tarter Chief and that both were residents, and had been for the past 12 months, of the State.

On April 1, 1980, the Talberts executed a purchase agreement for the sale of a 50% interest of Tarter Chief to Gary and Sherry Longos (the Longoses).

On December 29, 1980, the Talberts filed a 1981 application for stallion eligibility for Tarter Chief which listed the Longoses as own-

ing 50% of the stallion. Documentation reflecting the sale to the Longoses was also attached to the application.

Some five years later, the Department notified the Talberts that their stallion owners award was being reduced because they failed to notify the Department in accordance with its rules of a transfer of ownership in April 1980. The Talberts filed a petition with the Department demanding that the full award be paid, contending that Tarter Chief was a qualified stallion which satisfied the requirements of Illinois stallion ownership. A hearing was held on the Talberts' petition with the hearing officer finding that the Longoses assumed an equitable ownership in Tarter Chief in April 1980. This in turn caused a change in the composition of the partnership which resulted in a material change in ownership. According to the hearing officer, this change should have been communicated to the Department before standing the stallion for service; consequently, the Department properly reduced the Talberts' award. The Talberts filed a complaint for administrative review with the circuit court of St. Clair County. The court reversed the Department's decision finding that the Talberts were not new owners of Tarter Chief. Consequently, they did not have to comply with the Department's notice rules before standing Tarter Chief for service and therefore were entitled to the award.

The facts are not in dispute here. The only question before us is whether the Department's interpretation of its rules to deny the Talberts a portion of the stallion owners award has a reasonable basis in law. See *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 489, 378 N.E.2d 1160, 1164.

■■ ■ Pursuant to the authority granted by section 30 of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1979, ch. 8, par. 37—30), the Department implemented certain rules relating to the qualification of stallions. Section 290.150(c) of these rules provides as part of the qualification requirement that not less than 50% of a stallion shall be owned by a resident of Illinois who was for 12 months prior a resident of the State and that the stallion must have been standing for service in Illinois at the time of a colt's conception and was not standing for service outside the State during the calendar year in which the colt was conceived. (8 Ill. Adm. Code 290.150(c) (1980).) It is undisputed that the Talberts complied with these qualifications. It is also undisputed that the Talberts filed the required application for eligibility according to the Department's rules as set forth in section 290.155 (8 Ill. Adm. Code 290.155 (1980)). What is in dispute is the applicability of sections 290.160 and 290.180 to the Talberts. Section 290.160 states:

"New Owner of a Stallion Shall Qualify Stallion Before Offering Service

Any person who becomes the owner of a stallion after January 1 of any year and desires to stand such stallion for service shall, before standing or offering the stallion for service during the year in which acquired, qualify the stallion with the Department and comply with all rules as provided." (8 Ill. Adm. Code 290.160 (1980).)

Section 290.180 reads:

"Stallion Qualification Procedures

(a) To qualify a stallion, the owner is required to complete the annual Application for Stallion Eligibility Certificate and forward it to the Illinois Department of Agriculture, State Fairgrounds, Springfield, Illinois 62706.

(b) The issuance of an Illinois Stallion Eligibility Certificate by the Department is contingent on the stallion being inspected and identified by a Department investigator.

(c) In the event of a sale or transfer of ownership of a thoroughbred stallion qualified with the Department, the transfer of ownership shall be executed on the back of the Illinois Stallion Eligibility Certificate for such stallion and the endorsed Certificate forwarded to the Department.

(d) If the new owner is an Illinois resident and desires to qualify the stallion for eligibility in the Illinois Thoroughbred Breeders Fund Program, then the owner must submit an application for a Stallion Eligibility Certificate accompanied by a copy of the Bill of Sale and meet the requirements of 8 Ill. Adm. Code 290.160." (8 Ill. Adm. Code 290.180 (1980).)

Clearly, section 290.160 applies only to new owners. Also quite clearly, the Talberts were not new owners of Tarter Chief during the calendar year 1980. The Talberts could not be expected to comply with something not applicable to them, nor could the Department properly require them to do so. The same is also true for section 290.180(d). While administrative agencies are afforded great discretion in the application and construction of their own rules (see, *e.g., Neff v. Miller* (1986), 146 Ill. App. 3d 395, 402, 496 N.E.2d 1073, 1077; *Rend Lake College Federation of Teachers, Local 378 v. Board of Community College* (1980), 84 Ill. App. 3d 308, 311, 405 N.E.2d 364, 368), we cannot accept such an obvious misinterpretation of simple, concise language (see *Schmidt v. Personnel Board* (1980), 89 Ill. App. 3d 434, 437, 411 N.E.2d 1060, 1062-63; *Rend Lake*, 84 Ill. App. 3d at 311, 405 N.E.2d at 368). The Talberts were not new owners of Tarter Chief.

Therefore, they were not required to file a new application qualifying the stallion prior to standing or offering it for service in April of 1980.

Quite simply, the Department appears to have confused the rights of the Talberts with those of the Longoses. The Longoses, however, are not parties to the instant proceeding nor did they claim a right to the stallion owners award. Consequently, they too did not have to comply with the qualification requirements set forth in sections 290.180 and 290.160.

It is true that in general owners must comply with the Department's rules to receive benefits under the Program (see *Pauly v. Werries* (1984), 122 Ill. App. 3d 263, 461 N.E.2d 54), but owners do not have to comply with erroneous interpretations of those rules. Because the Talberts complied with the rules applicable to them, they are entitled to their full stallion owners award.

For the reasons above, we affirm the judgment of the circuit court of St. Clair County reversing the decision of the Department of Agriculture.

Affirmed.

LEWIS and CALVO, JJ., concur.