M.D. BUILDING MATERIAL COMPANY *et al.*, Plaintiffs, v. 910 CONSTRUCTION VENTURE *et al.*, Defendants (910 Construction Venture *et al.*, Counterplaintiffs and Third-Party Plaintiffs and Appellees; 910 South Michigan Partners Limited Partnership, Counterdefendant and Appellant; M.D. Building Material Company *et al.*, Counterdefendants; 910 Development Corporation *et al.*, Third-Party Defendants).

First District (6th Division) No. 1—91—0031

Opinion filed September 13, 1991.—Rehearing denied October 22, 1991.

Michael J. Rovell, Carlins & Moss, and Barry B. Berk, all of Chicago (Lisa I. Fair, Matthew N. Young, and Joel M. Carlins, of counsel), for appellant.

Miller, Shakman, Hamilton & Kurtzon, of Chicago (Michael L. Shakman, Barry A. Miller, and Diane F. Klotnia, of counsel), for appellees.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal arises from an order entered by the circuit court compelling an arbitration demand filed by 910 Construction Venture (Venture) against Loewenberg/Fitch Partnership, P.C. (Loewenberg/Fitch), an architectural firm. The demand was brought derivatively by Venture as a limited partner of the 910 South Michigan Partners Limited Partnership (Partnership). The general partner, 910 Development Cor-

poration (General Partner), has appealed, raising the following issues: (1) whether the trial court erred in compelling derivative arbitration when the entity whose rights were being asserted had made the business decision that the claims, if brought, should be decided in the circuit court; (2) whether the limited partner was an adequate representative to bring a derivative action for arbitration on behalf of the Partnership where Venture has filed a claim against the Partnership, and the Partnership has claims against Venture for terminating construction; (3) whether the Revised Uniform Limited Partnership Act (Ill. Rev. Stat. 1989, ch. 106½, par. 151—1 *et seq.*) authorizes a derivative action to compel arbitration; and (4) whether a limited partnership is an indispensable party to a derivative arbitration brought on its behalf. Although appellant is identified as the Partnership, both parties in this dispute are part of the Partnership and claim to be acting on its behalf. It is James Loewenberg as president of the General Partner who opposes arbitration and who has appealed from the trial court's order compelling it. Thus, we refer to the appellant as the General Partner.

The underlying dispute in this case is one of multiple disputes among the owners, contractors, subcontractors and architects who were engaged in the rehabilitation of a building at 910 South Michigan Avenue in Chicago. The building at issue is owned by a land trust with the American National Bank and Trust Company of Chicago (Owner) and the beneficial interest in the land trust is held by the Partnership. The Partnership consists of the one general partner and three limited partners. The limited partners are 910 Development Associates, 910 Partners and Venture. James Loewenberg is president of the General Partner, which owns 1% interest in the Partnership and also owns and controls the limited partner, 910 Development Associates, which owns 44% interest in the Partnership. Leonard Koval owns and controls 910 Partners, which owns 45% interest. The third limited partner is The Venture, which is a joint venture comprised of Crane Construction Company, Inc., and CDI and Associates, Inc., and which owns 10% interest in the Partnership.

As part of a plan to rehabilitate the building, the Owner entered into a series of contracts. One of the contracts was the agreement with Loewenberg/Fitch for architectural services. James Loewenberg, who was the president of the General Partner as well as the owner of the limited partner, 910 Development Associates, was also the president of the architectural firm. It was this contract which contains the arbitration provision which is at issue in this appeal. The Owner also

entered into a contract with Century Contractors, Inc., for the demolition work and with Venture for the rehabilitation of the building.

After Venture entered into the construction contract various problems and disputes developed. Venture claims that the building was not adequately prepared for reconstruction following the demolition work. Disputes also arose over the architectural plans, and the fact that the General Partner and architect failed to authorize change orders for necessary work and stopped authorizing payments to Venture and its subcontractors. When a subsequent settlement arrangement failed, Venture and its subcontractors ceased work. Construction on the project terminated on June 4, 1990. Since then the building has been abandoned and vulnerable to vandalism as well as weather conditions. On January 3, 1991, Venture filed a motion to appoint a receiver to protect the building against further damage which the trial court granted. According to Venture, the Owner Partnership defaulted on a $19 million construction loan obtained through the United States Department of Housing and Urban Development (HUD), and the lender has assigned the loan to the Government National Mortgage Association (GNMA), which will be assigning the mortgage to the Federal Housing Authority (FHA). A claim will be made by GNMA against the FHA for the amount of the construction loan under the appropriate FHA insurance program. Unless a settlement acceptable to the FHA can be arranged, there will be a foreclosure on the mortgage and a subsequent sale of the property which will leave the Partnership without any assets.

After construction on the project terminated, several mechanic's lien suits were filed. The complaints filed were (1) Fred Berglund & Sons, Inc. v. CDI & Associates, Inc.; (2) Century Contractors, Inc. v. American National Bank & Trust Co. of Chicago, as trustee under trust No. 32501; and (3) M.D. Building Material Co. v. 910 Construction Venture. The complaints were consolidated on September 6, 1990. On October 15, 1990, Venture filed its motion to compel arbitration in a derivative capacity pursuant to section 1001 of the Revised Uniform Limited Partnership Act (RULPA) (Ill. Rev. Stat. 1989, ch. 106½, par. 160—1), based on an arbitration provision in the Owner Partnership/architect contract. On the same day Venture also filed a 26-count counterclaim and third-party complaint against various subcontractors, the architect and the limited Partnership. In count IX, Venture realleged the claims of its arbitration demand and asked the court to compel arbitration of Venture's derivative claim against Loewenberg/Fitch if arbitration was contested. The major allegations of count IX of the counterclaim were that James Loewenberg had a

conflict of interest because he controlled both the Partnership and the architect, the architectural malpractice proximately caused the termination of the construction and the resulting injury to the Partnership, and that because of the existing conflict of interest, James Loewenberg would not file an arbitration demand on behalf of the Partnership against Loewenberg/Fitch.

After Venture's demand was filed, notices were sent to counsel for the General Partner and Loewenberg/Fitch. Each party was also sent a list of potential arbitrators and given approximately 10 days to strike any names. Counsel for Venture was the only one who responded. Loewenberg/Fitch was subsequently notified of the appointment of an arbitrator as well as the hearing, which was scheduled for December 5, 1990. Three weeks later, counsel for the General Partner sent a letter to the American Arbitration Association (AAA) with a stipulation of dismissal which was also signed by counsel for Loewenberg/Fitch. The document stated that the respective parties agreed to the dismissal of the arbitration. Venture subsequently filed a motion to compel arbitration, and at the hearing on Venture's motion, the General Partner filed a motion to stay. The trial court entered an order that the preliminary hearing before the arbitrator should proceed. At the arbitration proceeding, the arbitrator denied the motions to dismiss or stay the arbitration pending the trial court's ruling. On December 17, 1990, the trial court granted Venture's motion to compel arbitration and also granted the motion of the General Partner for an interlocutory appeal pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)), finding that its order "involved a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation." We allowed the Rule 308(a) appeal. The question of law submitted was whether Venture had the right to pursue arbitration in a derivative capacity. On January 11, 1991, the trial court granted the motion to stay arbitration proceedings pending this appeal.

The issue of whether the RULPA authorizes derivative arbitration, although listed as appellant's third issue, is the basis of the Rule 308 appeal. Therefore, we will address it first. We will also address the other issues because this appeal is in part brought pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)).

■ Because there is no controlling precedent, an initial step in resolving this issue is to closely examine the relevant statute in order to determine the legislative intent as found in the history, existing circumstances and contemporary conditions of the legislation. (*Miller v.*

*Department of Public Aid* (1981), 94 Ill. App. 3d 11, 14, 418 N.E.2d 178, citing *People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 285 N.E.2d 129.) Section 1001 of the RULPA provides:

> "No action shall be brought by a limited partner, or assignee who is entitled to exercise the rights of a partner to bring an action, in the right of a limited partnership to recover a judgment in its favor unless general partners with authority to do so have refused to bring the action or unless an effort to cause those general partners to bring the action is not likely to succeed." (Ill. Rev. Stat. 1989, ch. 106½, par. 160—1.)

Proper interpretation of a provision cannot be based solely on its language, and a court must also "determine the objective the statute sought to accomplish and the evils it desired to remedy." *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313, citing *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 416 N.E.2d 247; *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332.

■ While derivative actions are a relatively recent development in limited partnerships, they are well known in the corporate setting. In the corporate setting, a derivative suit is a device to protect shareholders against abuses by the corporation, its officers and directors. "The fundamental basis of a shareholders' derivative action is to enforce a corporate right which the corporation either refuses to assert, or by reason of circumstances is unable to assert, and in such a situation, a single shareholder may pursue a derivative action." *March v. Miller-Jesser, Inc.* (1990), 202 Ill. App. 3d 148, 159-60, 559 N.E.2d 844, citing *Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221.

■ In a limited partnership, as in publicly held corporations, ownership is separated from control. However, unlike the corporation, this separation results not only from the dispersion of ownership among thousands of investors, but also by the nature of the partnership, which is comprised of limited partners who are passive investors. (Hecker, *Limited Partners' Derivative Suits Under The Revised Uniform Limited Partnership Act*, 33 Vand. L. Rev. 343, 344 (1980).) The passive nature of the limited partners' role has often resulted in mismanagement and self-dealing by general partners. (33 Vand. L. Rev. at 344.) A similar view was expressed by the court in *Labovitz v. Dolan* (1989), 189 Ill. App. 3d 403, 416, 545 N.E.2d 304, quoting from Professor Daniel S. Reynold's article, *Loyalty & Limited Partnership*, 34 Kan. L. Rev. 1, 25-26 (1985), as follows:

" 'Self-dealing and conflicts of interest are endemic to the limited partnership. \*\*\* The general partners are typically the organizing entrepreneurs or promoters. They may be affiliated with the sellers of the enterprise's assets, and are frequently involved in multiple, potentially competing related enterprises.' "

In the corporate context this conduct would be the subject of a shareholders' derivative suit. Likewise, limited partners have received added protection through the enactment of section 1001 of the RULPA, which grants them the right to bring a derivative action on behalf of the partnership.

Appellant contends that the RULPA does not authorize derivative arbitration because it only allows the limited partner to bring an "action." Appellant claims that arbitration is not an action but a private voluntary proceeding for the resolution of disputes. In support of its argument, appellant cites *Madison v. Frank Lloyd Wright Foundation* (1963), 20 Wis. 2d 361, 122 N.W.2d 409, *Thorgaard Plumbing & Heating Co. v. King County* (1967), 71 Wash. 2d 126, 426 P.2d 828, and *Board of Education of the City School District v. Luna Electric Co.* (1972), 40 A.D. 2d 706, 336 N.Y.S.2d 683, all of which held that arbitration was not an action but an extrajudicial proceeding. However, see *Consolidated Labor Union Trust v. Clark* (Fla. App. 1986), 498 So. 2d 547, and *Tate v. Saratoga Savings & Loan Association* (1989), 216 Cal. App. 3d 843, 265 Cal. Rptr. 440, which held that an action included arbitration. The cases cited, all from other jurisdictions, are not only not decisive on this issue, but also appear to be inconclusive.

Appellant also claims that the language of section 1001 *et seq.* of the RULPA is evidence that arbitration is distinct from an action which can be brought derivatively under the statute. The language cited by appellant is the word "judgment" in section 1001, "plaintiff" in section 1002 and "complaint" in section 1003. Appellant contrasts these terms with those more commonly associated with arbitration such as "award," "claimant" and "claim" or "demand." Appellant argues that because words found in the provisions of the statute are those most commonly used in a judicial proceeding, the term "action" does not include arbitration.

In the absence of legislative intent to the contrary, the words in a statute should be given their plain, commonly understood meaning. However, "[t]his intent is not to be ascertained from form, but from the nature and object of the act and the consequences which result from construing it one way or another." *Miller*, 94 Ill. App. 3d at 17.

■ As stated above, the purpose of section 1001 *et seq.* of the RULPA is to provide added protection to limited partners as investors against the mismanagement and self-dealing of the general partner(s). In addition, where parties execute a contract which contains a valid arbitration clause, they are often irrevocably committed to arbitrate all disputes arising under the agreement. (See *TDE Ltd. v. Israel* (1989), 185 Ill. App. 3d 1059, 1063, 541 N.E.2d 1281; *Uehlein v. Shwachman* (1987), 156 Ill. App. 3d 274, 277, 509 N.E.2d 493; *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 846, 467 N.E.2d 932.) If section 1001 were interpreted as not being applicable to arbitration, and a general partner entered into a contract providing for arbitration as the exclusive remedy for the resolution of disputes, a limited partner with a claim of self-dealing or mismanagement against the general partner would not be able to act on behalf of the partnership and pursue his claim in a derivative capacity. Under these circumstances, the underlying purpose of section 1001 *et seq.* of the RULPA would be defeated. Therefore, in keeping with the evil the statute seeks to remedy and the goal it seeks to attain (see *Miller*, 94 Ill. App. 3d at 17), we interpret section 1001 *et seq.* of the RULPA to include arbitration as one of the actions which can be brought derivatively by a limited partner. This interpretation of the statute is also consistent with the policy in Illinois which favors arbitration as a method of settling disputes "in an easier, more expeditious and less expensive manner than by litigation." *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1981), 102 Ill. App. 3d 681, 683, 430 N.E.2d 251.

■ Appellant next raises two arguments as to why it would be improper for the trial court to compel derivative arbitration under the particular circumstances of this case. Appellant's first argument is that Venture is not a proper party to bring a derivative action on behalf of the Partnership because Venture has filed another claim against the Partnership, and the Partnership has claims against the Venture for terminating construction. Appellant claims that its interests could not be represented by an entity that is simultaneously suing it.

Venture's claims against the Partnership, the land trust and General Partner, collectively identified as Owners, are set forth in counts I through IV and count XV of Venture's counterclaim. Counts I, II, and IV contain allegations that the Owners are liable to Venture for various unpaid goods and services rendered by Venture under the construction contract. Count III claims that the Owners are liable to Ven-

ture for any liability Venture is found to have to its subcontractors or any other third party arising from the construction contract. The first four counts are asserted by Venture in its role as the contractor, and contain its claims for losses resulting from the termination of the project. The arbitration is also being brought by Venture to assert the claims of the Partnership for its losses due to the project's termination. We thus conclude that Venture's claims as a contractor against numerous entities including the Partnership do not interfere with Venture's ability as a limited partner to represent the Partnership in a derivative capacity. Count XV alleges that the Owners withheld information from Crane Construction Company which would have been material to Crane's decision to enter into the joint venture and the construction contract. Although these allegations are asserted against the Partnership, they are brought by Crane rather than Venture. Because it is Venture rather than Crane that is seeking derivative arbitration, appellant's argument is not applicable in this instance.

Appellant cites two Federal cases for the proposition that a party who has a claim against an entity should not be allowed to proceed in a derivative capacity against that entity. (See *Blum v. Morgan Guaranty Trust Co.* (5th Cir. 1976), 539 F.2d 1388, 1390; *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.* (1st Cir. 1975), 517 F.2d 24, 26-27.) However, the cases cited rely upon Federal Rule of Civil Procedure 23.1, which addresses derivative actions of shareholders of corporations. There is no analogous provision in Illinois which is applicable to partnerships.

■ In its reply brief, appellant also argues that Crane is not managing partner of Venture and, therefore, cannot act for Venture in bringing a derivative action against Loewenberg/Fitch. Appellant thus claims that Crane has no standing to compel arbitration derivatively. However, the merits of this argument cannot be considered where it was raised for the first time in appellant's reply brief contrary to Supreme Court Rule 341(g) (134 Ill. 2d R. 341(g)). See also *People v. Thomas* (1987), 116 Ill. 2d 290, 304, 507 N.E.2d 843.

■ Appellant next argues that Venture cannot override the General Partner's business judgment to have the claim against Loewenberg/Fitch adjudicated by a court rather than an arbitrator and that by stipulating to the dismissal of the arbitration, the General Partner has exercised its business judgment not to proceed with arbitration. Appellant relies on *Abramowitz v. Posner* (2d Cir. 1982), 672 F.2d 1025, *Zapata Corp. v. Maldonado* (Del. 1981), 430 A.2d 779, and *Powell v. Western Illinois Electric Cooperative* (1989), 180 Ill. App. 3d 581, 536 N.E.2d 231, in support of its argument that a motion to

compel arbitration should not have been granted without first conducting a hearing to allow the General Partner to present evidence that the refusal to arbitrate was a "good faith" exercise of its business judgment. Contrary to this argument, the hearing which was conducted on Venture's motion to compel arbitration provided appellant with the opportunity to present evidence that its refusal to arbitrate was a good-faith exercise of its business judgment.

■ Furthermore, the cases cited by appellant stand for the proposition that the business judgment rule only applies where the corporate management and directors are acting independently and in good faith. Where directors sit on both sides of a transaction or otherwise engage in self-dealing, they cannot rely on the protection of the business judgment rule. (*Aronson v. Lewis* (Del. 1984), 473 A.2d 805, 812; *Cohen v. Ayers* (7th Cir. 1979), 596 F.2d 733, 739; *Powell*, 180 Ill. App. 3d at 585.) In this case, Venture has pursued this derivative proceeding because James Loewenberg, as the president of the General Partner and as the managing partner of Loewenberg/Fitch, does sit on both sides of the dispute between the Partnership and the architect.

■ Appellant also claims that arbitration would multiply the proceedings and the General Partner would be required to defend claims arising from the project in a piecemeal and inefficient fashion because the parties to the arbitration proceeding would only be some of the parties to this multiparty litigation. Appellant cites *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, where an arbitration was enjoined because it only involved some of the parties to a multiparty litigation. Despite appellant's argument and its citation of authority, several more recent cases have rejected the judicial economy argument as a bar to the enforcement of a valid arbitration agreement. *TDE Ltd. v. Israel* (1989), 185 Ill. App. 3d 1059, 1068, 541 N.E.2d 1281; *Kotsakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 538, 491 N.E.2d 1322; *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 676, 456 N.E.2d 889.

■ Appellant's last argument is that if this court determines that Venture can pursue arbitration on behalf of the Partnership, the Partnership should be made a party to the arbitration proceeding. We initially note that the Partnership is a party to the arbitration where Venture is acting derivatively on the Partnership's behalf. Thus, the actual issue is whether appellant, also acting on behalf of the Partnership, is an indispensable party to the arbitration proceeding.

Counsel for the General Partner first raised this issue before the arbitrator on January 10, 1991, which was after the filing of its notice of appeal. The arbitrator denied the motion after counsel was unable to say what additional information his presence at the hearing could provide. Counsel then appeared before the trial court on the same day and presented an oral motion requesting that the arbitrator's ruling regarding his presence at the arbitration be reversed. The trial court requested a written copy of the hearing before the arbitrator as well as a written copy of counsel's motion. Counsel subsequently withdrew his oral motion. As a consequence, there was no final determination on this issue in the trial court, nor was it included in appellant's notice of appeal. Finally, the issue was not part of the question certified for appeal pursuant to Supreme Court Rule 308(a). (*See Williams v. Chicago Osteopathic Medical Center* (1988), 173 Ill. App. 3d 125, 127, 527 N.E.2d 409.) Therefore, the issue of whether appellant is an indispensible party to the arbitration is not properly before this court and cannot be reviewed.

For the aforementioned reasons, we conclude that Venture as a limited partner has the right to file and pursue arbitration in a derivative capacity. Accordingly, the order of the circuit court granting Venture's motion to compel arbitration against the Loewenberg/Fitch Partnership is affirmed.

Affirmed.

EGAN and LaPORTA, JJ., concur.