LUCILLE WILLIAMS *et al.*, Plaintiffs-Respondents, v. CHICAGO OSTEO-PATHIC MEDICAL CENTER *et al.*, Defendants-Petitioners.

First District (5th Division)   No. 87—1656

Opinion filed August 19, 1988.

Brian C. Fetzer and Thomas H. Fegan, both of Johnson, Cusack & Bell, Ltd., of Chicago, for appellants.

Robert J. Pavich and Barry A. Spevack, both of Monico & Pavich, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308), defendants Chicago Osteopathic Medical Center; Catherine McDermott, D.O.; Angelo Alexander, D.O.; and David Raminski, D.O., appeal to this court for a determination of a question of law certified by the trial court: "Does the statutory prohibition of punitive damages in healing art malpractice cases (Ch. 110, Sec. 2—1115) apply to an intentional fraud action arising from the provision of medical services by health care providers?" The interlocutory appeal resulted from the trial court's denial of defendants' motion to dismiss a punitive damages count in plaintiffs', Lucille and Raymond Williams', fraud complaint. The facts relevant to the appeal are undisputed.

Plaintiffs filed a two-count complaint against defendants alleging fraudulent misrepresentations and seeking compensatory and punitive damages. The fraud counts allege that after their premature baby was born, defendants told plaintiffs that the child was born dead. The baby, weighing approximately 1½ pounds, was born alive and was allegedly placed in a utility room where she could receive no neonatal care. An hour later she was found and removed by a nurse. Defendants allegedly ordered that the baby be returned to the utility room and be given no treatment. The nursing staff instead placed her in a delivery room. Approximately six hours after her birth, the child was put in the newborn nursery and treatment was initiated an hour later. Plaintiffs were told at this time that their daughter was alive but her chances of survival were slim. Approximately 11 hours after her birth, the baby died.

Plaintiffs claim that these alleged fraudulent misrepresentations deprived them of their fundamental right to participate in decisions affecting their daughter's life, thus depriving them of her life and companionship. Plaintiffs' request for punitive damages is based upon a common law fraud theory.

Defendants denied all of the allegations and moved to dismiss the punitive damages count on the basis that it is barred by section 2—

1115 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1115). The court denied the motion and certified the above-mentioned question to this court. Section 2—115 provides:

> "Punitive damages not recoverable in healing art and legal malpractice cases. In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." Ill. Rev. Stat. 1987, ch. 110, par. 2—1115.

Defendants assert that this provision bars punitive damages in all actions, including tort, that arise out of the providing of medical services. The trial court found that since there was an undisputed doctor-patient relationship between at least the mother and defendants-doctors, this relationship imposed a duty upon the doctors to inform plaintiffs of their daughter's condition. Defendants argue that the alleged tort (fraud) arose out of the doctor-patient relationship and is clearly within the concept of "healing art malpractice." They also contend that it was the legislature's intention to abolish all punitive damages in malpractice cases; to permit such damages in the present case would contravene the legislative intent.

Plaintiffs argue that the intentional fraud alleged in this case is not an act of medical malpractice since, although it was perpetrated by physicians and hospital personnel, it did not involve the exercise of medical care or judgment. Instead it consisted of misrepresentations to plaintiffs which deprived them of the fundamental right to make decisions regarding their daughter's life.

■ There are several problems with this appeal, some of which appear to be insurmountable. Unfortunately, the question certified to this court does not correspond to plaintiffs' arguments. We agree with their contentions that it is possible that the misrepresentations to plaintiffs regarding their daughter's live birth do not fall within the scope of "healing art malpractice," since no medical judgment or treatment was involved in the alleged acts of fraudulent misrepresentations to the parents. (See *Owens v. Manor Health Care Corp.* (1987), 159 Ill. App. 3d 684, 512 N.E.2d 820; see also *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 509 N.E.2d 702 (defining "healing"); *Mooney v. Graham Hospital Association* (1987), 160 Ill. App. 3d 376, 513 N.E.2d 633.) However, a court should not expand upon a certified question in order to answer others that could have been included. *State ex rel. Skinner v. The Lombard Co.* (1982), 106 Ill. App. 3d 307, 436 N.E.2d 566.

■ The question certified to this court is "Does the statutory

prohibition of punitive damages in healing art malpractice cases (Ch. 110, Sec. 2—1115) applying to an intentional fraud action arising from the provision of medical services by health care providers?" The phrase "intentional fraud action *arising from the provision of medical services*" would bring this cause within the purview of the language and intent of section 2—1115 of the statute: "in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice". If "the nature of the *** act" alleged should determine whether the act is healing art malpractice (*Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 655, 509 N.E.2d 702, 706), then an act "arising out of the provision of medical services" must be governed by section 2—1115. Therefore, punitive damages would be barred.

As a result of this court's conclusion, there is no need to address plaintiffs' equal protection assertion. The certified question does not reflect the issues addressed by plaintiffs on appeal. Since the question, as it is stated, relates to malpractice, the constitutionality of the statute was answered by our supreme court in *Bernier v. Burris* (1986), 113 Ill. 2d 219, 497 N.E.2d 763.

■ The difficulty with this appeal lies in the fact that the briefs and arguments before the court are at variance with the actual question certified. This raises the inference that the intended issue in this appeal is something other than the issue stated. (See *Patti v. Patti* (1978), 64 Ill. App. 3d 1043, 382 N.E.2d 276.) Since we can address no issue but that raised in the question certified, we answer the question in the affirmative and remand the matter for further proceedings.

Remanded for further proceedings.

SULLIVAN and PINCHAM, JJ., concur.