DALE P. OWEN, Petitioner-Appellant, v. BOARD OF EDUCATION OF KANKAKEE SCHOOL DISTRICT No. 111, Respondent-Appellee.

Third District    No. 3—93—0711

Opinion filed April 13, 1994.

Theresa M. Kulat, of Ottosen, Sinson & Trevarthen, Ltd., of Wheaton (Karl R. Ottosen, of counsel), for appellant.

Franczek, Sullivan, Mann, Crement, Hein & Relias, of Chicago (Andrea R. Waintroob, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

This appeal presents the issue of whether plaintiff's claim for reinstatement as an assistant principal was improperly dismissed by the circuit court of Kankakee County. For the reasons stated below, we reverse and remand.

## BACKGROUND

Plaintiff, Dale Owen, is a certified tenured teacher who has been continuously employed by defendant, Board of Education of Kankakee School District No. 111 (Board), since 1962. During the period of the 1973-74 school year through the 1985-86 school year, plaintiff was assigned by the Board to several administrative positions. Specifically, plaintiff was assigned as an assistant principal from 1974 to 1981, and as a dean of students from 1981 to 1986.

In 1975, plaintiff built his home in Bourbonnais, approximately 2.5 miles outside of the school district's boundaries. In 1977, the Board adopted a residency policy which has been amended periodically. The policy currently reads as follows:

"Any administrator hired after September 24, 1979, shall reside within the geographical boundaries of the Kankakee School District within 120 days of the first work day.

Any such person who does not comply within 120 days or who moves his residence outside the geographical boundaries of the Kankakee School District shall have automatically terminated his appointment."

After the 1985-86 school year, plaintiff was reassigned to teaching. He taught from the 1986-87 school year through the 1991-92 school year. Plaintiff applied for and received a promotion to assistant principal for the 1992-93 school year. However, his promotion was expressly conditioned upon becoming a resident of the school district. Plaintiff actively sought to purchase housing within the district during the 1992-93 school year, but was unsuccessful. Sometime in the winter of 1992-93, the superintendent of schools, Arvid Nelson, told plaintiff that if he were to produce a lease showing residence within the district by April 1, 1993, it would satisfy the residency requirement. Plaintiff was aware of at least six other administrative employees of the Board who did not actually live within the district.

In March 1993, plaintiff entered into a lease for an apartment located within the school district. He submitted a copy of the lease to the Board's personnel director as proof of residency. Although his im-

mediate supervisor and the superintendent recommended that plaintiff remain as assistant principal for the following 1993-94 school year, the Board voted against retaining plaintiff as assistant principal. As a result of the Board's actions, plaintiff was assigned to teach for the 1993-94 school year. The superintendent told plaintiff that the sole reason why he was not retained as assistant principal was because he did not reside in the district.

Plaintiff filed a three-count complaint requesting, among other things, reinstatement as an assistant principal. Count I of the complaint was for *mandamus*; count II requested injunctive relief; and count III alleged a violation of 42 U.S.C. § 1983 (1993). The Board moved for and was granted a dismissal of all of plaintiff's counts. Plaintiff appeals.

## DISCUSSION

### I. MOOTNESS

■ The Board argues as a threshold issue that plaintiff's claims for *mandamus* and injunctive relief are moot because he seeks to be reinstated as assistant principal for the current 1993-94 school year. A case is moot when no actual rights or interests of the parties remain or when events occur which render it impossible for the reviewing court to grant effective relief to either party. (*Harris v. Education Officers Election Board of Community Consolidated District 110* (1990), 203 Ill. App. 3d 917, 920, 561 N.E.2d 204.) It is true that plaintiff alleged in his complaint that he intended to retire following the 1993-94 school year. However, there is still time left in the 1993-94 school year to remedy plaintiff's grievance. Furthermore, if he does retire, plaintiff's pension rights will be affected by the amount of compensation he receives for 1993-94. Therefore, we believe that this case is not moot.

Assuming *arguendo* that this case was moot, a court may still review the issue if it involves a substantial public interest. This exception to the mootness doctrine will be applied if all of the following criteria are clearly shown: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. *Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391.

We believe that the instant case meets this test. The residency requirement of a board of education of a public school is a matter of a public nature, not a private dispute. This is the first time that an appellate court has addressed the meaning of "teacher" under the

School Code for purposes of construing the residency requirement. There is a likelihood that this issue will recur, considering that six similarly situated administrative personnel are alleged to be in the Board's employ. Accordingly, we will address the merits of this case.

## II. STATUTORY CONSTRUCTION OF "TEACHER"

Plaintiff argues that the trial court erred in dismissing his complaint because he is and always was, during his employment with the Board, a teacher. This status is important because under section 24—4.1 of the School Code (105 ILCS 5/1—1 *et seq.* (West 1992)), "[r]esidency within any school district shall not be considered in determining the employment or the compensation of a teacher or whether to retain, promote, assign or transfer that teacher." 105 ILCS 5/24—4.1 (West 1992).

The Board asserts that the trial court correctly dismissed the complaint because, taking all of the allegations as true, plaintiff failed to state a cause of action. A certified school district employee does not acquire a legal right to any particular assignment within a school district. The residency requirement for administrators does not violate section 24—4.1 because the statute does not apply to administrators.

The central issue of this case is whether plaintiff is a "teacher" for purposes of the prohibition of residency requirements under section 24—4.1. (105 ILCS 5/24—4.1 (West 1992).) This is the first time an appellate court has been called upon to construe section 24—4.1, which states:

"[a]s used in *this and the succeeding* Sections of this Article, 'teacher' means any or all school district employees regularly required to be certified under laws relating to the certification of teachers." (Emphasis added.) 105 ILCS 5/24—11 (West 1992).

When construing a statute, it is fundamental that a court give the legislative language at issue its plain and ordinary meaning. Where the language is plain, clear and unambiguous, the court will not resort to other aids for construction. *Department of Central Management Services v. Illinois State Labor Relations Board* (1993), 249 Ill. App. 3d 740, 747, 619 N.E.2d 239.

■ We believe that the language of section 24—11 is plain, clear and unambiguous; this distinctive statutory definition of "teacher" is to be used "in this and the succeeding Sections of this Article." (105 ILCS 5/24—4.1 (West 1992).) Because the statutory ban on residency requirements for teachers under section 24—4.1 *precedes* section 24—11, the definition of "teacher" in section 24—11 does not apply to section 24—4.1.

Moreover, section 24—4, which immediately precedes 24—4.1, prohibits discrimination on the basis of color, race, sex, nationality or religion against any applicant for *"superintendent, principal, teacher or otherwise."* (Emphasis added.) (105 ILCS 24—4 (West 1992).) Section 24—4.1 prohibits residency requirements only for "teachers." The restrictive scope of section 24—4.1 indicates that the legislature intended the prohibition on residency requirements to be applied exclusively to teachers.

Further, the plain meaning of the word "teacher" does not support plaintiff's argument. "Teacher" is defined as "one whose occupation is to instruct." (Webster's Third New International Dictionary 2346 (1976).) Plaintiff, as an assistant principal, did not teach or instruct. He cannot be considered a "teacher" using the ordinary meaning of the term.

III. THE BOARD'S *DE FACTO* POLICY

Plaintiff also argues that the Board had a *de facto* policy that allowed similarly situated administrators to produce a lease of a residence in the district and maintain their administrative positions and salary without actually complying with the residency requirement. The Board acted arbitrarily when it enforced the express residency requirement against plaintiff.

The Board responds that plaintiff's original complaint did not contain sufficient allegations that the Board arbitrarily applied its residency requirement to him. When plaintiff attempted to amend his complaint after the filing of the instant appeal, the trial court correctly concluded it lacked jurisdiction to amend the pleading.

■ We must first review the issue of whether the complaint adequately stated a cause of action. The relevant paragraphs of the complaint state:

"16. The policy of the District at all times relevant hereto has been to consider an employee a resident of the District if the employee produces residence [*sic*] of leasing an apartment within the District. Actual time spent living in the apartment has never been considered.

17. Dr. Arvid Nelson, Defendant's agent and Superintendent of Schools, stated to Plaintiff that to satisfy Defendant's residency requirement he should obtain a lease for an apartment in the District. Dr. Nelson implied that Plaintiff did not have to actually move into the District by stating that he, Dr. Nelson, had a townhouse in Chicago, Illinois and had leased an apartment in the District and if Plaintiff did the same Dr. Nelson 'would not be checking where he slept.'

18. At least six other current certificated employees of Defendant who are assigned to administrative positions are not now, nor were they during the 1992-93 school year actually living within the District."

These allegations present a series of facts, which, if true, show that the Board had a residency policy that required persons to reside in the district, but in practice allowed those who lived outside the district to avoid its enforcement by an artifice. Such arbitrary enforcement of the policy against plaintiff states a cause of action.

While a certified school district employee does not acquire tenure or any other legal right in any particular assignment within a school district, it has been held that the board's action of reassignment must be "bona fide and not in the nature of chicanery or subterfuge designed to subvert the provisions of the Teacher Tenure Law." (*Lester v. Board of Education of School District No. 119* (1967), 87 Ill. App. 2d 269, 280, 230 N.E.2d 893; *Lane v. Board of Education of Fairbury-Cropsey Community Unit School District No. 3* (1976), 38 Ill. App. 3d 742, 744, 348 N.E.2d 470.) We conclude that the same rule also applies to potential pension rights of a certified school district employee, and thus we reverse the dismissal of the complaint and remand for further proceedings.

Count I of the complaint requests *mandamus*, an extraordinary remedy appropriate only where there is a clear right to the requested relief, a clear duty to the respondent to act, and clear authority in the respondent to act. (*Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 467-68, 537 N.E.2d 784.) *Mandamus* cannot be utilized to direct a public official or body to reach a particular decision or to exercise its discretion in a particular way, even if the judgment has been erroneously exercised. *Winston Plaza Currency Exchange, Inc. v. Department of Financial Institutions* (1991), 211 Ill. App. 3d 1062, 1068, 570 N.E.2d 855, *appeal denied* (1991), 141 Ill. 2d 562.

When considering a motion to dismiss for failure to state a cause of action, the trial court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from them. (*Hensler v. Busey Bank* (1992), 231 Ill. App. 3d 920, 596 N.E.2d 1269.) Here, the complaint indicates that the Board's residency requirement had been transformed, *de facto*, into a nondiscretionary policy of allowing the residency requirement to be met by providing proof of a lease for real property located within the school district. (See *Freeman v. Lane* (1985), 129 Ill. App. 3d 1061, 1063-64, 473 N.E.2d 584.) If the Board allowed the Superintendent and six other employees to satisfy the residency requirement with an apartment lease and then denied the

304

same opportunity to plaintiff, the Board would have acted arbitrarily in assigning plaintiff to a teaching position for 1993-94.

We have not addressed the merits of plaintiff's other counts for injunction and relief under 42 U.S.C. § 1983 (1993), but both rely on the same salient facts as plaintiff's *mandamus* count. Because we find plaintiff has adequately alleged the existence of a *de facto* policy, the trial court should consider the merits of all three counts. Should the 1993-94 school year end before the resolution of this case, we note that plaintiff has requested monetary damages, including his administrative salary, as a part of his prayer for relief under the *mandamus* and section 1983 counts.

On remand, the trial court must determine whether a *de facto* policy of accepting leases did in fact exist, and, if so, whether the residency requirement was applied arbitrarily to plaintiff.

The order of the circuit court of Kankakee County is reversed and this cause remanded for further proceeding consistent with this opinion.

Reversed and remanded.

McCUSKEY and STOUDER, JJ., concur.