ROBERTA L. CRIPE, Guardian of the Adult and Conservator of the Estate of Roberta A. Schmitz, Plaintiff-Appellee, v. THOMAS E. LEITER *et al.*, Defendants-Appellants.

Third District    Nos. 3—96—1008, 3—96—1033 cons.

Opinion filed July 14, 1997.—Rehearing denied August 21, 1997.

Brad A. Elward, Karen L. Kendall (argued), David R. Sinn, and J. Kevin Wolfe, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Bradley S. McMillan (argued), of Heiple & McMillan, of Peoria, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff Roberta Cripe, as guardian for Roberta Schmitz, brought this action for fraud, breach of fiduciary duty and legal malpractice against defendants Thomas Leiter and his law firm, The Leiter Group. The trial court found that section 2—1115 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—1115 (West 1994)) did not prohibit Cripe from seeking punitive damages for the common law fraud counts in her complaint, and we granted Cripe's application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) (3—96—1008). During the course of the litigation, Thomas Leiter failed to comply with a request to produce income tax records,

and the trial court held him in indirect civil contempt. Leiter appealed that ruling (3—96—1033), and we consolidated the two appeals. We hold that section 2—1115 does not prohibit a plaintiff from seeking punitive damages when the plaintiff's complaint states a cause of action for common law fraud. We also hold that Leiter must comply with the order that required him to produce his individual income tax returns, and if he does so, the contempt order is to be vacated. Accordingly, we affirm and remand with directions.

## FACTS

Roberta Schmitz was the sole beneficiary of two trusts. She hired Leiter to transfer the trusts from the First National Bank of Peoria to the South Side Bank. After the South Side Bank was appointed as the successor trustee of the trusts, it retained Leiter as its attorney with respect to the trusts. Schmitz also retained Leiter to defend a proceeding to declare her incompetent. That proceeding was filed by Schmitz' daughter, Roberta Cripe, who is the current guardian of her estate and the plaintiff herein (Guardian).

In her second amended complaint, the Guardian alleged that Schmitz had received several billing statements in which the defendants made false statements with regard to the number of hours that were spent on the trust matters and the guardianship case. The Guardian further alleged that the defendants knew that these statements were false and that Schmitz suffered $40,000 in damages as a result of her reliance on the statements.

The defendants responded by filing a motion to strike the portions of the complaint that sought punitive damages. The trial court struck the prayer for punitive damages on all counts except those that alleged common law fraud. Thereafter, we granted the defendants' petition for leave to appeal pursuant to Supreme Court Rule 308.

Eventually, the Guardian served the defendants with a request to produce financial documents related to her punitive damages claim. Leiter failed to comply with the request to produce his personal income tax returns, and the trial court found him in indirect civil contempt. The parties agree that Leiter's refusal to comply with the order was for the purpose of obtaining interlocutory review of the discovery order.

## ANALYSIS

The certified question in this appeal is whether section 2—1115 of the Code prohibits punitive damages when a plaintiff alleges that an attorney committed common law fraud by falsifying billings.

■ The General Assembly has prohibited punitive damages in

medical and legal malpractice cases by enacting section 2—1115 of the Code, which provides:

> "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." 735 ILCS 5/2—1115 (West 1994).

Although section 2—1115 of the Code is broad enough to encompass any acts arising out of the provision of legal services, it is only applicable if the behavior alleged in the complaint amounts to legal malpractice. *Safeway Insurance Co. v. Spinak*, 267 Ill. App. 3d 513, 518, 641 N.E.2d 834, 837 (1994).

■ Legal malpractice is defined as the "failure of an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in performance of tasks which they undertake." Black's Law Dictionary 959 (6th ed. 1990). To prevail in an action for legal malpractice, the plaintiff must plead and prove: (1) the existence of an attorney-client relationship; (2) a negligent act or omission that breached a duty the attorney owed to the client; (3) proximate cause that establishes that but for the attorney's negligence the plaintiff would not have suffered an injury; and (4) damages. *Beastall v. Madson*, 235 Ill. App. 3d 95, 600 N.E.2d 1323 (1992).

■ Based on the foregoing definition and the elements that a plaintiff must prove, it is clear that legal malpractice and common law fraud are distinct causes of action. Compare *Beastall*, 235 Ill. App. 3d at 100, 600 N.E.2d at 1327 (action for legal malpractice is based on negligent breach of professional duty to client), with *Connor v. Merrill Lynch Realty, Inc.*, 220 Ill. App. 3d 522, 528, 581 N.E.2d 196, 200 (1991) (action for fraud is based on intentional misrepresentation made to induce another party to act). In fact, one Illinois court has specifically held that "[p]rofessional malpractice is a species of negligence, not fraud." *Roe v. Catholic Charities of the Diocese of Springfield*, 225 Ill. App. 3d 519, 528, 588 N.E.2d 354, 360 (1992). The difference between fraud, which involves intentional conduct, and malpractice, which involves only negligent conduct, is significant; punitive damages are prohibited in simple negligence cases but are appropriate in fraud cases. See *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415, 563 N.E.2d 397, 402 (1990) (punitive damages appropriate for fraud and gross negligence but not for simple negligence).

The defendants argue that the legislative history of section 2—1115 implies that common law fraud is included within the scope of the statute. But the plain language of the statute clearly limits its

applicability to legal malpractice cases. Since the statute is not ambiguous, we cannot resort to extrinsic aids such as legislative history. See *Owen v. Board of Education of Kankakee School District No. 111*, 261 Ill. App. 3d 298, 632 N.E.2d 1073 (1994).

The defendants also point out that two cases have held that section 2—1115 bars punitive damages in cases that involve intentional conduct. In *Calhoun v. Rane*, 234 Ill. App. 3d 90, 599 N.E.2d 1318 (1992), the plaintiff alleged that an attorney had committed wilful and wanton conduct. According to the complaint, the attorney deliberately lied to his client in an attempt to cover up his negligence. *Calhoun*, 234 Ill. App. 3d at 97, 599 N.E.2d at 1322. The *Calhoun* court held that section 2—1115 prevented the plaintiff from seeking punitive damages.

While *Calhoun* supports the defendants' position in this case, that court failed to analyze whether the alleged conduct amounted to legal malpractice. To the extent that *Calhoun* holds that section 2—1115 bars punitive damages in an action based on an intentional fraud, we disagree with that holding.

The defendants also rely on *Williams v. Chicago Osteopathic Medical Center*, 173 Ill. App. 3d 125, 527 N.E.2d 409 (1988). In that case, the plaintiff alleged that several doctors had committed fraud. *Williams*, 173 Ill. App. 3d at 126, 527 N.E.2d at 410. The appellate court held that section 2—1115 prohibits punitive damages for fraud if the fraud arises out of the provision of medical services. *Williams*, 173 Ill. App. 3d at 128, 527 N.E.2d at 411.

As in *Calhoun*, the *Williams* court failed to analyze whether the conduct alleged in the complaint amounted to malpractice. Instead, the court focused on whether the conduct arose out of the defendants' provision of medical services. *Williams*, 173 Ill. App. 3d at 128, 527 N.E.2d at 411. Because fraud falls outside the definition of malpractice, we also decline to follow the *Williams* holding.

Finally, the defendants argue that since an attorney must exercise professional judgment to determine what fee is appropriate, the alleged fraud in this case amounts to malpractice. This argument is premised on the notion that fraud committed by an attorney amounts to malpractice. As stated above, we disagree with that notion. Accordingly, we hold that section 2—1115 does not prohibit a plaintiff from seeking punitive damages when the plaintiff's complaint states a cause of action for common law fraud.

Our conclusion in this case is further supported by the fact that a plaintiff has a common law right to punitive damages in a fraud case. *Black v. Iovino*, 219 Ill. App. 3d 378, 580 N.E.2d 139 (1991). It is axiomatic that statutes in derogation of the common law must be

strictly construed. *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 641 N.E.2d 440 (1994). As such, the restriction that section 2—1115 places on punitive damages should not be read so broadly as to include claims that fall outside of the scope of the restriction.

Moreover, the defendants' proposed reading of section 2—1115 would prohibit punitive damages in any case against an attorney that arises out of the provision of legal services, even if the attorney's conduct amounted to intentional fraud. While it is true that the General Assembly has enacted several measures to limit the imposition of punitive damages, these statutes have not had the effect of completely barring punitive damages in all cases. To the extent that punitive damages are still available, they must be viewed as an appropriate means of punishing a wrongdoer and deterring that party and others from committing similar acts in the future. See *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414-15, 563 N.E.2d 397, 401-02 (1990) (punitive damages appropriate for punishing and deterring certain types of misconduct). Since those who utilize legal services place a great deal of trust in the hands of their attorney, the attorney-client relationship presents a significant potential for abuse. For this reason, punitive damages are peculiarly appropriate in cases involving allegations that an attorney defrauded his client.

We turn now to Leiter's contention that the trial court erred by holding him in contempt.

Leiter first argues that he should not be required to disclose financial information because section 2—1115 prohibits punitive damages. Based on our above analysis and holding, this argument clearly fails.

Second, Leiter claims that even if punitive damages are allowed, his personal income tax returns are not discoverable.

Evidence of the defendant's net worth and pecuniary position may be introduced where punitive damages are at issue. *Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806, 638 N.E.2d 1127 (1994). A reviewing court will not interfere with a trial court's discovery rulings absent a manifest abuse of discretion. *First United Bank v. Hofmann*, 227 Ill. App. 3d 1036, 591 N.E.2d 915 (1992).

In the case at bar, we have held that punitive damages may be awarded. As such, Leiter's net worth and pecuniary position are directly relevant. Therefore, we affirm the court's judgment on this issue.

Nevertheless, refusal to comply with a discovery order to force a contempt citation is an appropriate method to obtain an immediate interlocutory review of the order. *Dunkin v. Silver Cross Hospital*,

215 Ill. App. 3d 65, 573 N.E.2d 848 (1991). Accordingly, Leiter must comply with the court's order to disclose his federal tax returns within 30 days of the issuance of this order; if he does so, the contempt order shall be vacated by the trial court. We therefore remand for further proceedings consistent with this opinion.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed and the cause is remanded with directions.

No. 3—96—1008, Affirmed.
No. 3—96—1033, Affirmed and remanded with directions.

LYTTON, P.J., and SLATER, J., concur.