In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3449

MINOR M. SCOTT, III, as personal
representative for the Estate of
MAUREEN K. SCOTT, deceased,

*Plaintiff-Appellant*,

*v.*

CHUHAK & TECSON, P.C., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 6858 — **Ronald A. Guzmán**, *Judge.*

ARGUED OCTOBER 26, 2013 — DECIDED AUGUST 5, 2013

Before EASTERBROOK, *Chief Judge*, and CUDAHY and TINDER,
*Circuit Judges.*

TINDER, *Circuit Judge.* This case has its origins in a dispute
between two sisters, Maureen Scott and Diane Shah, over their
parents' estate. Minor Scott, the former husband of now-
deceased Maureen and personal representative of her estate,

brought suit against Chuhak & Tecson, P.C. ("C&T"), and two of its attorneys, alleging breach of fiduciary duty arising out of the firm's estate-planning representation. Minor also sued Diane, a C&T client, in state court. Concerned with the need to protect privileged documents and communications arising out of the attorney-client relationship between Diane and C&T from disclosure to the attorneys representing Maureen's estate in the state litigation, the federal district court entered an agreed protective order and denied the estate's motion to compel the production of certain documents. When the estate violated this protective order, the district court imposed sanctions.

The estate appeals the imposition of sanctions, the court's denial of its motion to reconsider the sanctions order, its grant of C&T's motion for summary judgment, its grant of C&T's motion to dismiss several of the estate's claims, and its denial of several of the estate's motions to compel. We affirm on all issues.

## I.

Since 1973, Ruth Kiver and Milton Kiver have employed C&T, an Illinois law firm, for estate-planning purposes. Among the instruments that C&T prepared for the Kivers were the Milton S. Kiver Grantor Trust ("MGT"), the Ruth A. Kiver Grantor Trust ("RGT"), the Ruth A. Kiver Wealth Trust ("RWT"), and the Ruth A. Kiver Wealth Trust II ("RWT II"). These trusts were intended to benefit the Kivers' daughters, Diane and Maureen, among others.

Ruth and Milton designated Diane as the trustee of the MGT, RGT, and RWT II. Maureen and Diane were both

designated trustees of the RWT. The MGT requires that, upon Milton's death, if any of the trust estate is determined to be part of Milton's estate for federal estate tax purposes, the smallest fraction of the trust estate that will result in the lowest federal estate tax liability is to be placed in a separate trust for Ruth, and the remainder is to be divided in separate trusts, of equal value, for Diane and Maureen. The MGT also states that, if a separate trust beneficiary dies before her trust is completely distributed, "such separate trust or the remainder thereof shall be distributed to or for the benefit of any [of] … the beneficiary's heirs." Also relevant to this appeal, the RGT, RWT, and RWT II allow the trustee to make distributions for certain purposes to Ruth's descendants, including Diane and Maureen.

Milton died in 2005. After his death, C&T created separate trusts for Maureen and Diane. C&T attorneys were present at a family meeting following Milton's death. During this meeting, the attorneys distributed an eighteen-page summary of the Kiver estate plans, identifying each trust's rights of distribution, powers of appointment, and other significant features. Maureen and Minor attended this meeting. The estate claims that C&T did not at any point give Maureen or Minor a physical copy of the actual MGT. Later that year, Maureen hired C&T to prepare her own estate plan.

By 2006, both sisters had accumulated intra-family debts: Maureen owed a significant amount of money to Ruth, and Diane owed a significant sum to a trust for which Ruth was the primary beneficiary. To enable the sisters to repay their debts, Ruth, Diane, and the family accountant decided that equal gifts would be made to Diane and Maureen from various family trusts. Diane received her gift, but did not repay the family

trust to which she owed money. Maureen did not receive her gift, but her debts were forgiven. We adopt the parties' use of the term "the gift plan" to refer to this episode.

Maureen died in March 2007. At the time of her death, she and Minor had two children, Samuel and Rebecca. Minor now serves as personal representative of Maureen's estate. Two months later that year, the IRS accepted Milton's final estate tax returns.

The estate filed this suit in federal district court against C&T and two of the firm's attorneys in November 2009, alleging that C&T failed to disclose the existence and terms of certain family trusts to Maureen, to her detriment, and failed to make distributions to her. The estate claimed that these allegations constitute a breach of fiduciary duty, namely legal malpractice. Arthur Gold represented the estate in federal court, and Michael Flaherty represented C&T.

The estate also filed a separate suit in state court against Diane, alleging that Diane breached her fiduciary duties as trustee of various family trusts by failing to disclose the existence of certain trusts to Maureen or make distributions to her from them. Andrew Fleming represented the estate in this state court case. Importantly, Fleming was not an attorney of record for the estate in the federal case, and had not filed any appearance on behalf of the estate in federal court. Mark Stang represented Diane in the state case. Diane was a client of C&T during the relevant period.

The discovery period in this case began on January 6, 2010, and, following an extension, was set to expire on August 9. During discovery, the estate filed a motion to compel C&T to

produce metadata, billing records, other documents, and a response to an interrogatory. This motion to compel was denied on March 23, 2011.

On July 9, the district court granted in part C&T's motion to dismiss under Rule 12(b)(6). The district court dismissed with prejudice the estate's claims based on C&T's alleged interference with the gift plan and struck the estate's request for punitive damages. (The district court also ruled on other claims that are not relevant to this appeal.) In response, the estate filed an amended complaint, which did not contain allegations related to the gift plan or request punitive damages.

Since Diane was a client of C&T, the estate's pursuit of simultaneous suits against C&T and Diane presented some knotty issues concerning attorney-client privilege during the discovery process. To address these issues, the federal district court entered an agreed protective order governing discovery disclosure. That order included the following passages:

> § 7  All information or documents designated as Privileged Material in accordance with this Order shall be used only for the purpose of prosecuting or defending this lawsuit … and <u>not</u> for any other litigation … . All information designated as Privileged Material in accordance with this Order shall not be … communicated in any way to anyone except those persons designated in this Protective Order to whom it is necessary that such documents or information be … communi-

cated for purposes permitted under this paragraph.

…

§ 9 The [designated] persons … shall be as follows:

(a) Counsel for the Parties (including members or associates of such

counsel's firm) as well as their paralegal, investigative, secretarial and clerical personnel only for purposes of the prosecution or defense of this litigation;

(b) Each Party to this action and those representatives of each Party charged with responsibility for the prosecution or defense of the litigation, provided that access is given only for purposes of the prosecution or defense of this litigation;

C&T produced over 9,500 documents during discovery, all of which were marked "Privileged." These documents included some items that we typically would not think of as privileged, e.g., a print-out from a publicly accessible government website of information concerning interest rates. The estate, however, did not contest the designation of any of these documents as privileged.

When Minor appeared at C&T's scheduled deposition of him for the federal suit, he was accompanied by both Gold (the

estate's attorney in the federal suit) and Fleming (its attorney in the state court proceeding). C&T objected to Fleming's presence, based on a concern that privileged information concerning Diane, the defendant in the state court proceeding, would be disclosed during the deposition. Minor, however, refused to be deposed without Fleming present. During the ensuing dispute between the parties over Fleming's presence, Gold acknowledged that he had given privileged documents to Fleming that C&T had produced in the federal case.

C&T moved for the district court to sanction the estate for these actions. The court granted C&T's motion for sanctions on August 3, 2010. The court ordered that the discovery period would close on that date—four business days before it was set to expire—as a sanction for Fleming's presence at Minor's deposition and the sharing of privileged documents with Fleming. The court then denied the estate's motion to reconsider the sanctions order.

Later in the litigation, the estate disclosed Robert Merrick as its expert witness regarding legal ethics. Merrick stated that C&T's failure to inform Maureen of her rights under the trusts constitutes a breach of fiduciary duty. C&T moved to strike Merrick's opinions, noting that Merrick did not review any facts in this case aside from those told to him by Minor or Gold, and that the actual facts contradicted Merrick's opinion. The district court determined that the undisputed facts show that C&T informed Maureen of her rights concerning the RGT, RWT, and RWT II when the law firm provided her with the eighteen-page summary. Accordingly, the district court struck Merrick's opinion regarding these trusts. The court did not strike his opinions regarding the MGT.

C&T then moved for summary judgment on all of the estate's claims. On September 26, 2011, the district court granted C&T's motion with respect to the RGT, RWT, and RWT II, since the estate had presented no evidence that C&T had concealed the terms of these trusts from Maureen. The district court also granted C&T's motion with respect to the MGT. In doing so, the court noted that the MGT required C&T to wait until the IRS issued a closing letter containing a final determination of Milton's federal estate tax obligations before C&T could create a separate trust for Maureen, and that Maureen died two months before the IRS issued this letter. Hence, even if Maureen were fully informed of the terms of the MGT, Maureen could not have obtained assets from the trust for herself or her estate before she died. The district court concluded, therefore, that C&T's alleged breach concerning this trust could not have proximately caused Maureen to suffer damages.

## II.

The estate appeals all of the district court's orders. We address the issues in the estate's appeal in the sequence in which it presents them. First, the estate argues that the district court erred in granting C&T's motion for sanctions (and, relatedly, in denying the estate's motion for reconsideration of this order). Second, the estate claims that the district court erred in granting C&T's motion for summary judgment. Third, the estate challenges the court's granting C&T's 12(b)(6) motion to dismiss. Fourth, the estate contends that the court erred in denying its motion to compel.

**A.**

We first address the estate's challenge to the district courts imposition of discovery sanctions. We review discovery sanctions orders for an abuse of discretion. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). "Under this standard, we uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently." *Id.* A party meets its burden under this standard "only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992). This standard presents a heavy burden to parties challenging the imposition of sanctions. *See id.* ("We cannot understate the difficulty of the task litigants face when challenging a district court's choice of sanctions."). This burden is not insurmountable, however, as a district court may only impose discovery sanctions "where a party displays willfulness, bad faith, or fault." *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005) (internal quotation omitted).

Here, the district court imposed sanctions based on its conclusion that Gold, the estate's counsel in the federal suit, violated the Protective Order by intentionally transferring privileged documents to Fleming, who represented the estate in state court against Diane. The estate claims that the language in the Protective Order can be fairly interpreted as allowing disclosure to Fleming, who is the estate's lawyer in the state court proceeding. The estate presents four arguments in support of this position. We find all four unpersuasive.

First, the estate claims that the protective order "contains no limiting language" or—in the alternative, presumably—"generic language." We call the estate's attention to the first sentence of § 7 of the order: "All information or documents designated as Privileged Material in accordance with this Order shall be used only for the purpose of prosecuting or defending this lawsuit … and <u>not</u> for any other litigation" (emphasis in original). The inclusion of the words "only" and "*this* lawsuit" (emphasis added) in this sentence should have put the estate on notice of the permissible uses of material obtained through discovery. The phrase "and <u>not</u> for any other litigation," complete with an emphasis on the word "not," serves as a symbolic exclamation point. Section 9 of the order provides additional guidance regarding which individuals may view privileged material. Each of the relevant subsections of § 9 includes a limiting phrase—e.g., "only for purposes of … this litigation"—which clearly specifies that the designated individuals may view the confidential materials exclusively in this context. This repeated use of limiting language in §§ 7 and 9 is more than sufficient to convey to the estate that it was prohibited from disseminating privileged information to individuals involved in other litigation, including Fleming.

Second, the estate argues that the sanctions were draconian, because they prevented the estate from developing relevant facts to establish C&T's alleged concealment of Maureen's entitlements. According to the estate, the sanctions order enabled C&T to gain an "unconscionable advantage" by "cut[ting] off [the estate's] right to properly develop [its] case," and thereby "eliminat[ing] a level playing field." We do not think that there is anything unconscionable about ending

discovery four business days early, following an approximately six-month window for discovery, based on the estate's violation of the express terms of the protective order.

Third, the estate faults the district court for penalizing it while ignoring similar conduct by C&T. The estate notes that Mark Stang, a C&T attorney who represented Diane in the state court case, was present when Minor was deposed by other C&T attorneys concerning the federal case. The estate also notes that Flaherty, a C&T attorney in the federal case, asked questions during that deposition of Minor that were related to the state court case, which the estate presumed were asked for Stang's benefit. The estate argues that Stang's presence at a deposition in the federal case constitutes an equivalent violation of the protective order by C&T. The estate presents no legal authorities to support its argument that a district court's supposedly disparate treatment of parties that engage in arguably similar conduct constitutes abuse of discretion. Moreover, we are not so sure that the parties' alleged misdeeds are analogous. Most significantly, since Stang did not ask any questions in the deposition and the estate cannot substantiate its allegation that other C&T attorneys asked questions for Stang's benefit, it is a stretch to conclude, as the estate does, that Stang "clearly participated in this federal case." Without more, the estate's argument that the district court treated the estate and C&T differently based on the parties' similar—but far from identical—conduct does not rise to the level of abuse of discretion.

Finally, the estate criticizes C&T for having stamped "Privileged" on all of the documents that C&T produced. But this alleged bad faith conduct on the part of C&T cannot justify the estate's intentional violation of the protective order. If the estate believed that C&T was not complying with the spirit of the discovery order, the estate should have alerted the district court. By claiming in the course of its challenge to the discovery sanctions that C&T engaged in bad faith conduct prior to the estate's violation of the protective order, the estate is treading dangerously close to a self-help argument.

For these reasons, we find the estate's claim that the district court abused its discretion in imposing sanctions to be unpersuasive. We agree with the district court's determination that the estate violated the clear language of the protective order. Given the importance of shielding privileged materials from unauthorized disclosure to adverse parties in the state court case, we find nothing unreasonable about the district court's ending discovery four days early as a means of sanctioning the estate for intentionally enabling its attorney in the state proceedings to access privileged documents.

## B.

Next, we turn to the estate's claim that the district court erred in granting, in part, C&T's motion for summary judgment. We review the district court's grant of summary judgment de novo, construing all relevant facts and inferences in favor of nonmoving party. *Porter v. City of Chicago*, 700 F.3d 944, 950 (7th Cir. 2012). We will affirm a grant of summary judgment only if the movant—here, C&T—"shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The estate alleges that C&T committed malpractice by failing to inform Maureen of the terms of the RGT, RWT, RWT II, and MGT, and by failing to obtain from her a waiver of C&T's alleged conflict-of-interest inherent in the firm's concurrent representation of both Maureen and Diane. To succeed on these claims for each of the four trusts, the estate must show that: (i) C&T owed Maureen a duty of care based on the attorney-client relationship; (ii) C&T breached that duty; and (iii) C&T's breach proximately caused Maureen to suffer actual damages. *Fox v. Seiden*, 887 N.E.2d 736, 742 (Ill. App. Ct. 2008). With respect to the estate's claims relating to the RGT, RWT, and RWT II, the district court determined that no genuine dispute as to any material fact existed concerning the breach-of-duty element. For the estate's MGT and conflict-of-interest claims, the court found that no genuine dispute as to any material fact existed regarding the damages element.

Concerning the RGT, RWT, and RWT II, the district court determined that there was no triable issue of fact regarding whether C&T breached the duty that it owed to Maureen based on the firm's attorney-client relationship with her. As evidence that C&T's allegedly breached its duty to Maureen, the estate offered a report from Merrick, an expert in legal ethics. Merrick reviewed the estate's allegation in its amended complaint that C&T failed to inform Maureen of her rights under the RGT, RWT, and RWT II. Based on these allegations, Merrick concluded that C&T violated the common-law duty of care that lawyers owe to their clients, as reflected in the Illinois Rules of Professional Conduct.

The district court, however, noted that the estate later admitted additional facts that refute the allegations in its amended complaint. Most significantly, the estate later admitted that, during a meeting between Maureen and C&T attorneys, C&T gave Maureen an eighteen-page summary of the relevant properties of the RGT, RWT, and RWT II. The district court concluded that this admission—which the estate made after it had filed its amended complaint, the document on which Merrick based his expert opinion—refutes Merrick's earlier conclusion that C&T breached its duty to Maureen by failing to inform her of her rights under these trusts. In light of this new and undisputed evidence, the district court determined that Merrick's opinion did not meet the evidentiary requirements for expert testimony. *See* Fed. R. Evid. 702(b) (expert testimony must be "based on sufficient facts or data"). Since the estate had presented no other evidence of breach concerning these trusts, the district court concluded that no triable issue regarding C&T's alleged breach of duty existed and therefore granted C&T's motion for summary judgment on these claims.

On appeal, the estate claims that the district court erred in reaching this conclusion, but its argument is truly cursory, skirting our rules on waiver. The estate devotes considerable ink in its appellate brief to the argument that C&T breached its duty to Maureen by failing to explain the workings of the *MGT* to her. The estate then asserts that "[t]he same is true for similar trusts," and references the sections of its amended complaint that discuss the RGT, RWT, and RWT II.

The estate's discussion of breach with respect to the MGT claim is a red herring in the context of its claim that the district court erred in dismissing claims regarding the RGT, RWT, and RWT II. Simply put, the district court's grant of summary judgment to C&T on the estate's MGT claim has to do with the lack of a triable issue concerning damages, not breach of duty. In fact, the district court expressly stated that the estate had offered "sufficient [evidence] to create a triable issue as to whether defendants breached their duty to Maureen by failing to tell her about the terms of the MGT." For the estate to devote considerable attention to the uncontested proposition that a triable issue exists with respect to breach on the MGT claim, and then breezily assert that "[t]he same is true" concerning the RGT, RWT, and RWT II, assumes away the central issue in this portion of the estate's appeal. Because the estate has presented no reason why the district court was incorrect in finding that no triable issue exists regarding whether C&T breached its duty to Maureen concerning the RGT, RWT, and RWT II, we affirm this portion of the district court's grant of summary judgment for C&T.

Having rejected the estate's claims concerning the RGT, RWT, and RWT II, we turn to its breach-of-duty claim regarding the MGT and to its claim that C&T failed to obtain Maureen's informed consent for the firm's representation of both sisters. For these two claims, the district court found that no triable issue existed on the damages element, i.e., whether C&T's alleged breach of duty proximately caused Maureen to suffer damages. For these claims, the district court determined that, absent C&T's alleged breach, Maureen would have been informed of the following: (1) that separate trusts would be

established for the Krivers' descendants, including Maureen, following Milton's death, and (2) that the provision requiring the establishment of separate trusts was subject to the contingent martial trust provision, which states that separate trusts will be created only if the IRS makes a final determination that any portion of the MGT is includible in Milton's estate for federal estate tax purposes. In other words, absent C&T's alleged breach, Maureen would have learned that a separate trust would be established for her following the fulfillment of two necessary conditions: Milton's death and the final determination of Milton's federal tax liability.

Could Maureen have suffered damages based on C&T's alleged failure to share this information? We think not. It is undisputed that Maureen died two months before Milton's federal tax liability was finally determined. Thus, according to the terms of the MGT instrument, C&T was not required to create a separate trust for Maureen during Maureen's lifetime. Thus, we fail to see how Maureen could have benefitted from possessing the information concerning the MGT that C&T allegedly withheld from her.

On appeal, the estate notes that, regardless of whether C&T was obligated to create a separate trust for Maureen, the district court's analysis ignored the estate's evidence that C&T actually *did* create a separate trust for Maureen (as well as subtrusts for Maureen's children) prior to the final determination of Milton's federal tax liability. But even so, the estate does not show how C&T's alleged failure to provide Maureen with information concerning the MGT trust caused Maureen or her estate to suffer damages. According to the terms of the MGT, any monies contained in a separate trust established for

Maureen could be distributed only "to or for the benefit of any one or more of such of the Grantor's then living or thereafter born descendants, the beneficiary's heirs at law, or such religious, scientific, charitable or educational organizations … as such beneficiary may appoint by his or her will." Recall that Minor brought suit against C&T not in his individual capacity, but as personal representative for Maureen's estate. Given that a grantor's estate is not included in this list of individuals or entities to which disbursements may be made from a separate trust established under the MGT, Maureen's estate cannot show that it has suffered damages.

For these reasons, we concur with the district court's determination that a triable issue does not exist concerning whether C&T's alleged breach proximately caused Maureen to suffer damages. We therefore affirm the district court's grant of summary judgment for C&T on the estate's MGT and conflict-of-interest claims.

## C.

The estate also challenges the district court's partial grant of C&T's motion to dismiss. The estate's appeal focuses on two of the issues that the court addressed in its dismissal order. First, the estate argues that the district court erred in dismissing with prejudice its claim that C&T interfered with the gift plan. Second, the estate argues that the district court erred in striking its request for punitive damages.[1]

---

[1] The "Issues Presented for Review" section of the estate's appellate brief also raises the prospect that the district court erred in "dismissing with

(continued...)

We review de novo a district court's dismissal under Rule 12(b)(6), construing factual allegations and any reasonable inferences in the light most favorable to the plaintiff. *Chavez v. Ill. State Police*, 251 F.3d 612, 648 (7th Cir. 2001). Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As an initial matter, we reject C&T's contention that the estate has abandoned these issues on appeal. C&T bases this contention on the fact that the estate presented these arguments only in its original complaint, and not in its amended complaint. C&T appears to misunderstand the effect of an amended complaint on the contents of the original complaint. It is true that when a plaintiff files an amended complaint, the amended complaint supersedes the original complaint. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). That supersession, however, does not mean that claims in the original complaint

---

[1] (...continued)
prejudice" the estate's claim that C&T "fail[ed] to tell Plaintiff's decedent about the existence and terms of her mother's Wealth and Grantor Trusts." Since the estate's brief does not contain any further discussion of this issue, we consider it waived. *See Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir. 1988) ("[A]n appellant must present in its brief the issues to the appellate court that the appellant desires to litigate. In addition, the issues must be supported by appropriate judicial authority."). We also note that the estate's statement that the district court dismissed this third claim with prejudice is incorrect.

that do not appear in the amended complaint are abandoned or waived.

If adopted, C&T's position—that a litigant must replead in later complaints claims that the court rejected in an earlier complaint in order to preserve those issues on appeal—would lead to needlessly duplicative pleadings and make-work for district courts. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) ("It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected. Had the plaintiffs repleaded their [claim] … the judge would have dismissed the charge, not only with prejudice, but with annoyance."). Instead, the statement that an "amended pleaded supersedes the original," *Pirant v. U.S. Postal Service,* 542 F.3d 202, 207 (7th Cir. 2008), has two effects. First, facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss. *Id*. Second, where the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out. *Moriarty v. Larry G. Lewis Funeral Dirs., Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998). Since the claims from the original complaint to which the estate calls our attention do not contradict any claims present in the amended complaint, this scenario is not relevant. Thus, we will consider claims that the estate raised in its original claim but omitted from its amended complaint. *See Bastian*, 892 F.2d at 682–83.

Moving to the merits, we note that the estate's claim of C&T interference with the gift plan is premised on the allegation that "[d]espite Ruth's clear intentions, C&T did not implement

the documents signed by Ruth," which purportedly would have provided Maureen with a gift from one of the trusts. As the district court correctly concluded, however, this purported failure cannot support a legal-malpractice claim because procuring gifts from the trusts for Maureen is beyond the scope of C&T's representation of Maureen. *See Practical Offset, Inc. v. Davis*, 404 N.E.2d 516, 520 (Ill. App. Ct. 1980) (stating that "an attorney's duty to his client exists in relation to the scope of the representation sought by the client and under-taken by the attorney"). According to the estate's complaint, Maureen retained C&T "to prepare and document her estate plan." This work description cannot fairly be read to include a duty to assist Maureen in obtaining gifts from Ruth's trusts. Hence, the estate's complaint does not contain sufficient facts to state a malpractice claim grounded in alleged C&T interfer-ence with the gift plan that is plausible on its face.

On appeal, the estate provides a more expansive descrip-tion of the reason why Maureen retained C&T: to "harmonize" Maureen's estate with her parents' estates. The estate does not explain how the proffered fact that Maureen retained C&T to harmonize the family's estates supports its allegation that C&T breached its duty by not assisting Maureen in procuring a gift from one of Ruth's trusts—a necessary component of the estate's legal malpractice claim. Moreover, the evidence in the record that the estate offers to support its contention that C&T "w[as] retained to 'harmonize' Maureen's estate with that of her parents" is flimsy. To support this claim, the estate quotes an October 28, 2004, letter from a C&T attorney to Maureen. When read in its entirety, however, this letter makes clear that the full scope of C&T's representation of Maureen was to

prepare an estate plan for her.[2] Thus, we agree with the district court's determination that the estate has not alleged sufficient facts to support plausibly the claim that C&T owed Maureen a duty to help her to procure a gift from Ruth's trusts. The court acted properly in granting the portion of C&T's Rule 12(b)(6) motion pertaining to the estate's claim that C&T's handling of the gift plan constitutes malpractice.

Concerning the second issue in this section of the estate's appeal, we agree with the district court's decision to strike the estate's request for punitive damages. Illinois law bars punitive damages in legal malpractice cases. 735 Ill. Comp. Stat. 5/2-1115 ("In all cases … in which the plaintiff seeks damages by reason of legal … malpractice, no punitive … damages shall be allowed."). On appeal, the estate cites *Cripe v. Leiter*, in which an Illinois appellate court ordered an attorney who had falsified billing records to pay punitive damages. 683 N.E.2d 516 (Ill. App. Ct. 1997). That case is inapposite, however. The *Cripe* court distinguished between common-law fraud claims, e.g., the fraudulent billing claim at issue in that case, and legal malpractice claims, which the court "defined as 'the failure of an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess in performance of tasks which they undertake.'" *Cripe*, 683 N.E.2d at 519 (quoting *Black's Law Dictionary* 959 (6th ed. 1990)). The

---

[2] The relevant portion of this letter reads: "We discussed having estate planning documents for you to harmonize with your parents' estate planning documents. … The estate plan will encompass documents for both you and Minor, but if you want a plan for you exclusively, that is doable also. We will provide you with an abstract, summarizing the recommended estate planning provisions."

*Cripe* court also restated Illinois' prohibition on punitive damages in legal malpractice cases. *Id.* In the instant case, the various breaches of fiduciary duty that the estate alleges based on the substance of C&T's representation of Maureen are clearly classified as malpractice claims under Illinois law. *See Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000). Since the only allegations contained in the estate's complaint involved legal malpractice, the estate could not have recovered punitive damages for its injuries.

**D.**

Finally, we consider the estate's appeal of the district court's denial of its motion to compel C&T to produce metadata, billing records, documents that the estate believes may show that the trusts distributed funds to Diane following Maureen's death, and a response to an interrogatory asking whether C&T distributed funds from the trusts to Diane following Maureen's death.

We review discovery rulings for an abuse of discretion. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). A district court does not abuse its discretion "unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Vallone v. CAN Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004) (internal quotation omitted). Moreover, we will not reverse a district court's decision concerning discovery "absent a clear showing

that the denial of discovery resulted in actual and substantial prejudice." *Id.* (internal quotation omitted).

The estate does not argue that any of these four circumstances are present here. The estate does not claim that the record contains no evidence to support the decision; cites no legal authority whatsoever to support its position; does not point to any facts in dispute; and does not argue that the decision is arbitrary. Naturally, the estate thinks that the production of these items would have been helpful to its case, but that obviously is not sufficient for reversal. Without any references to legal authorities or any statement that generously could be considered legal argumentation, the estate has given us no reason to reverse. *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties.").[3]

The "district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Gile*, 95 F.3d at 495. Here, the district court carefully explained its reasons for denying the estate's motion to compel with respect to each of the items which the estate sought. Most notably, the district court expressed concern over the possibility that allowing the estate to cast an overly wide net during discovery in the federal case could risk compromising information that is privileged and nondiscoverable in the state case. Given this legitimate concern—along with the estate's silence regarding whether the district court acted irrationally, based

---

[3] We also register our concern that the statement of facts in the estate's brief does not contain any facts pertaining to this issue, in violation of our rules. *See* Fed. R. App. P. 28(a)(7).

on an erroneous conclusion of law or fact, or arbitrarily—we conclude that the district court did not abuse its discretion in denying the estate's motion to compel.

## III.

The complexity of the multiple trusts that the parents created, the untimely death of Maureen, the pursuit of concurrent state and federal suits against Diane and C&T, the length of this litigation, and the disorderly nature of the estate's presentation to our court, taken together, evoke a middle installment of *Bleak House*. This opinion, however, may push the federal chapter of the story to a close. For the aforementioned reasons, we AFFIRM the district court on all of its challenged orders.