NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided December 29, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3939

| | |
|---|---|
| MARIO HOWARD LLOYD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-1291 |
| SCOTT MOATS and TED WALL, *Defendants-Appellees*. | James E. Shadid, *Chief Judge*. |

**O R D E R**

Mario Lloyd, a prisoner at the Federal Correctional Institution in Pekin, Illinois, brought an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that a prison doctor and nurse were deliberately indifferent to his foot pain in violation of the Eighth Amendment. He asserts that Dr. Scott Moats and Nurse Ted Wall misdiagnosed the cause of his foot pain, unreasonably

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

delayed diagnostic testing, and inadequately treated him. The district court entered summary judgment for both defendants, and Lloyd appeals. We affirm the judgment.

We review the facts, taken here from the summary-judgment record, in the light most favorable to Lloyd. *Estate of Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017). While incarcerated, on October 10, 2011, Lloyd participated in a flag football game and badly injured his right foot. Afterwards his foot was bruised and he iced it all night. He attempted to go to sick call the next day, but he was not seen until October 13. That day, Lloyd says, he complained to Nurse Wall of pain in his right foot; Wall told him the discomfort was caused by a bunion. Lloyd said that his next visit was later in October. At that time he asked Wall to schedule an x-ray for his foot, but Wall did not do so, citing his lack of authority. Lloyd swears that he first asked Wall for an x-ray within a week of the October 13 appointment and then again in early November. Yet the October visits are not recorded in Lloyd's medical records (which, Wall attested, cannot be deleted), and Wall stated in his affidavit that neither alleged October visit took place.

The first medical visit documented in the record was on November 15, 2011, when Wall diagnosed Lloyd with a bunion. Wall advised Lloyd "to obtain a wider or size larger issue boot" because he did not meet the "criteria for a medical shoe." A month later, Lloyd saw Dr. Moats and complained of pain over his right, first, metatarsophalangeal joint (the joint that connects the big toe to the base of the foot). Dr. Moats also diagnosed a bunion and took an x-ray, which revealed an "old fracture in midfoot" that had healed itself. Dr. Moats's notes state that Lloyd reported that he had hurt that portion of his foot "playing football" but that the area was "no longer bothersome." (Lloyd disputes that he said this, but the difference in account does not matter to the outcome of his appeal.) Dr. Moats did not recommend any treatment for the fracture, but he was concerned about the "moth eaten" appearance in the area immediately below the base of Lloyd's big toe, and suspected an "inflammatory process." Dr. Moats prescribed aspirin and ordered blood tests, which did not reveal anything unusual. A radiologist also reviewed Lloyd's x-ray and reached the same conclusions: any bony trauma Lloyd had suffered had healed, and the source of his pain was the bunion and "degeneration."

Lloyd made several more complaints of foot pain to Dr. Moats and Wall, and the doctor ordered another x-ray on March 15, 2013. A radiologist reviewed this x-ray too, interpreting the results to be "[n]egative except for moderate degenerative joint disease." Wall told Lloyd about these results but documented that Lloyd was "unwilling to accept findings … wants to be evaluated again." The following week, after Lloyd continued to complain of foot pain, another prison doctor ordered an MRI.

It was completed almost five months later, on August 28, and revealed "mild degenerative changes" with no abnormality of the midfoot.

Before the MRI, Lloyd went to sick call on August 19 and complained that over-the-counter pain medication was not easing his foot pain. But Wall countered that he reviewed Lloyd's many commissary purchases since October 2011, and Lloyd had never purchased any pain relievers. The defendants submitted Lloyd's commissary report and an affidavit from the facilities trust fund supervisor, who confirmed that Lloyd did not buy pain relievers from September 9, 2011 to September 4, 2014 (essentially, within three years after the injury). Lloyd disputes this, but the receipts for pain relievers that he submitted were from after September 4, 2014.

On June 25, 2014, Lloyd was sent to an outside podiatrist. He told her that he had a history of pain on the top of his right foot and the joint of his big toe. She noted that he had a decreased range of motion in both areas, but the remainder of the physical exam was normal. The podiatrist reviewed Lloyd's MRI results, which were positive for osteoarthritis in two of his joints. She discussed diabetic and osteoarthritis foot care with him and recommended a pair of "Dr. Comfort" diabetic shoes. The prison's utilization review committee, however, denied Lloyd's request for these shoes, determining that, based on Dr. Moats's recommendation that osteoarthritis did not require specialized footwear, Lloyd could safely wear the prison-issued boots. (The committee does not appear to have considered whether the podiatrist recommended the "diabetic" shoes to alleviate any symptoms caused by Lloyd's diabetes.)

After Lloyd exhausted his administrative remedies, he filed this suit in June 2013 (before the MRI and his visit to the podiatrist). The district judge screened the complaint, see 28 U.S.C. § 1915A, and allowed Lloyd to proceed on his claim that Dr. Moats and Wall were deliberately indifferent for failing to investigate the cause of Lloyd's foot pain, waiting two months to x-ray his foot, and not immediately ordering an MRI. Lloyd's theory was that he broke his foot in his October 2011 fall, that this break was the cause of his pain, and that he continued to suffer because of the defendants' inattention to the fracture. Lloyd asked the court three times for recruited counsel but the court denied each request.

During discovery Lloyd served on the defendants requests to produce his medical records and interrogatories. The defendants turned over more than 900 pages of records and answered most of his interrogatories with only a few objections. Lloyd made two motions—one to compel the defendants to provide more discovery and one to require them to answer his interrogatories fully; he also accused the defendants of supplying "false information" about his treatment. The district judge denied both

requests, noting that Lloyd did "not state, with specificity, which of Defendants [*sic*] objections he believes to be unsupported" and that the defendants had adequately responded to his interrogatories. Lloyd also requested discovery sanctions because, he alleged, the defendants' attorneys tampered with the disc containing images of his x-rays. The judge also denied this motion because he found no evidence of tampering and Lloyd had been able to review the information on the disc at one point.

Eventually Lloyd and the defendants filed cross-motions for summary judgment. The judge granted the defendants' motion and denied Lloyd's. He offered two reasons for those rulings: first, that "the bunion and arthritic pain" did not represent "a serious medical condition"; and second, that the defendants were not deliberately indifferent in their treatment of Lloyd's foot pain because they "undertook an extensive work-up of Plaintiff's foot pain and recommended appropriate over-the-counter pain medication."

On appeal Lloyd argues that factual disputes preclude a conclusion that there was no deliberate indifference as a matter of law. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a deliberate-indifference claim, a prisoner must demonstrate both that his medical condition is "objectively" serious and that the officials acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). "[A] prison official cannot be found liable under the Eighth Amendment … unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

The parties dispute whether Lloyd's foot pain was an objectively serious medical condition. But we need not reach this issue because, even assuming that it was, there is insufficient evidence from which a reasonable jury could conclude that the defendants acted with deliberate indifference.

Lloyd maintains that the delay in Nurse Wall and Dr. Moats's treatment of his fracture, including the delay in ordering x-rays and an MRI, was unlawful. Even assuming that Lloyd fractured his foot in October 2011 (although it is impossible to tell *when* the fracture occurred), nothing in this record supports the conclusion that the delay before the x-rays and MRI were taken was an "inexplicable delay in treatment which serves no penological interest" or that it "exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (en banc). It was up to Lloyd to "place verifying medical evidence in the record to establish" that it was, and he did not do so. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Moreover, a delay in ordering tests must be evaluated in light of the entire record to determine if it evinces deliberate indifference: "[T]he question whether an X-ray or additional

diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; see *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014).

The record of treatment that Lloyd received forecloses a finding of deliberate indifference. See *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (emphasizing the "detailed account of the treatment he received" in rejecting deliberate indifference finding). Wall and Dr. Moats examined Lloyd multiple times, took x-rays that an outside radiologist interpreted, and referred Lloyd to an outside podiatrist. The outside specialist confirmed that degeneration and osteoarthritis caused Lloyd's pain. Neither defendant disregarded Lloyd's complaints of foot pain or made outrageous treatment (or non-treatment) decisions; the record reflects a level of continuous care that is not consistent with a malicious state of mind. A prisoner "is entitled to reasonable measures" to prevent a serious risk of harm, but he "is not entitled to the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). On this record, a jury could not reasonably conclude that the defendants did not provide adequate care.

Finally, neither Lloyd's disagreement with his doctors nor any disagreement among the doctors, establishes deliberate indifference in this case. Plainly Lloyd disagrees with the course of action that Dr. Moats and Nurse Wall took in treating his foot pain, and also with their diagnosis of its cause; he says the fracture caused his ongoing pain, and he thinks he should have been given stronger pain medication and special footwear. But Lloyd's disagreement is irrelevant. He is not competent to diagnose himself, and he has no right to choose his own treatment. See *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, the fact that Dr. Moats disagreed with the podiatrist's recommendation for special shoes is not material here because the shoes were not prescribed, only recommended pending "prison medical department" approval. While a genuine issue of material fact may arise when a prison physician ignores a specialist-prescribed treatment, *Gil v. Reed*, 381 F.3d 649, 663 (7th Cir. 2004), a prison physician's decision to reject another doctor's treatment recommendation in favor of his own "does not amount to deliberate indifference where both recommendations are made by qualified medical professionals" and the prison doctor's decision is made for a medical reason. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); see *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015). As long as Dr. Moats used medical judgment—and there is no evidence he did not—he was free to devise his own treatment plan. See *Holloway*, 700 F.3d at 1073.

Lloyd also argues on appeal that the district judge abused his discretion by denying Lloyd's motions for recruitment of counsel, but we disagree. When an indigent plaintiff requests recruitment of counsel the district judge must ask whether the plaintiff made reasonable attempts to independently obtain counsel (or was prevented from doing so), and whether it appears that he is competent to litigate the case. See *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). We will reverse only if Lloyd demonstrates prejudice. See *id*. at 659.

The district judge denied Lloyd's first motion as premature, his second because he had not demonstrated reasonable efforts to retain counsel, and his third because he was competent to litigate the case himself. In denying the third motion, the judge noted that Lloyd "had strenuously prosecuted this case, and has filed a variety of motions, including motions to compel." Lloyd's extensive summary-judgment filings also demonstrated that he could litigate the case himself. See *Pruitt*, 503 F.3d at 654–56. This decision was well within the bounds of the judge's discretion. Lloyd believes that he suffered prejudice because, without an attorney, he could not obtain an expert medical witness, but he has not persuaded us that an expert would have made a difference. He already had the benefit of an outside podiatrist's review of his medical records and her recommendation to provide Lloyd with special shoes. Further, to be useful an expert would have to opine that Dr. Moats and Wall strayed so far from the standard of care that their actions surpassed malpractice and instead approached intentional wrongdoing, see *Arnett*, 658 F.3d at 751. The nature and extent of the treatment in this case would make finding such an expert unlikely, at best.

Lloyd also says that the district court erred in denying his discovery motions. But "[t]rial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017) (internal alterations omitted). They also have broad discretion to impose discovery sanctions, and may impose them only "where a party displays willfulness, bad faith, or fault." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013). In the district judge's view, the defendants complied with Lloyd's discovery requests when they did not have valid objections, and they did not improperly object to or withhold anything. The judge further concluded that Lloyd's assertions that the defendants acted in bad faith, provided "false information," and tampered with the discs containing Lloyd's x-rays were baseless. We too see no evidence of censurable conduct, and we will not second-guess the district judge's ruling without good reason. See *Chatham v. Davis*, 839 F.3d 679, 687 (7th Cir. 2016).

We AFFIRM the judgment of the district court.